CC-1999-178                                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br>    Recurrido<br><br>    v.<br><br>Jorge Marcano Parrilla<br>    Peticionario | Certiorari<br><br>2000 TSPR 169 |
| --- | --- |

Número del Caso: CC-1999-0178

Fecha: 22/noviembre/2000

Tribunal de Circuito de Apelaciones:

　　　　　　　　　　Circuito Regional VII

Juez Ponente:

　　　　　　　　　　Hon. Carlos Soler Aquino

Abogado de la Parte Peticionaria:

　　　　　　　　　　Lcdo. José A. Andréu Fuentes

Oficina del Procurador General:

　　　　　　　　　　Lcda. Mayra J. Serrano Borges
　　　　　　　　　　Procuradora General Auxiliar

Materia: Asesinato en Primer Grado y Ley de Armas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Recurrido

        Vs.                       CC-1999-178         Certiorari

Jorge Marcano Parrilla

    Acusado-Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 22 de noviembre de 2000.

Corresponde resolver cuál es el grado de prueba requerida para lograr la concesión de un nuevo juicio al amparo de la Regla 192 de Procedimiento Criminal. Resolvemos que la prueba requerida ha de ser exacta y certera, a tal grado que deje clara la inocencia del convicto al punto que la continuación de su encarcelamiento ofenda el sentido de justicia.

**I.**

El peticionario Jorge Marcano Parrilla, también conocido por "Machito", fue hallado culpable por el delito de Asesinato en Primer Grado, Arts. 82 al 84 del Código Penal, 33 L.P.R.A. 4001 al 4003, y por violaciones a los Arts. 6 y 8 de la Ley de Armas, 25

LPRA sec. 416 y 418. Inconforme, Marcano Parrilla interpuso apelación ante el Tribunal de Circuito de Apelaciones, el cual confirmó la sentencia al concluir que la prueba presentada por el Ministerio Público fue suficiente para establecer la culpabilidad del acusado.

Tras solicitar reconsideración, la cual fue denegada, Marcano Parrilla radicó una petición de nuevo juicio al amparo de las Reglas 188(a), 192 y 192.1 de Procedimiento Criminal. Posteriormente, reformuló la solicitud para apoyarla exclusivamente en la Regla 192. Fundamentó su moción en la existencia de nueva evidencia testifical, alegadamente no disponible durante el juicio, que demostraba la ausencia del peticionario del lugar de los hechos. Esta consistía en el testimonio de Marcos I. Roldán Castro, alegado testigo ocular de los hechos, y Elisa Orta Fernández, quien ofreció evidencia acumulativa a la de Roldán Castro.

Después de celebrar una vista evidenciaria, dicho foro denegó la moción aduciendo que Marcano Parrilla no demostró diligencia en procurar la presencia de los nuevos testigos al momento del juicio y que, en todo caso, el peso de la nueva prueba era insuficiente para provocar un nuevo juicio, por ser impugnatoria y por no ser de tal magnitud que justificara socavar la credibilidad del proceso anterior.

Luego de presentada y denegada una moción de reconsideración, Marcano Parrilla acudió al Tribunal de Circuito de Apelaciones. El foro apelativo confirmó la resolución por los mismos fundamentos esbozados por el Tribunal de Primera Instancia.

Así las cosas, el peticionario acudió oportunamente ante nos mediante solicitud de certiorari imputando error del Tribunal de Circuito de Apelaciones "al confirmar al Tribunal de Primera Instancia y denegar la moción de nuevo juicio del peticionario a pesar de haberse cumplido con todos los requisitos para la concesión de un nuevo juicio". Con el beneficio de las comparecencias de las partes, estamos en posición de resolver.

**II.**

En nuestro ordenamiento, el nuevo juicio por presentación de nueva prueba está reglamentado por dos esquemas procesales: de un lado, la Regla 188(a) de Procedimiento Criminal permite el nuevo juicio bajo el supuesto de

> [q]ue se ha descubierto nueva prueba, la cual, de haber sido presentada en el juicio, probablemente habría cambiado el veredicto o fallo del tribunal, y la que no pudo el acusado con razonable diligencia descubrir y presentar en el juicio. Al solicitar nuevo juicio por este fundamento, el acusado deberá acompañar a su moción la nueva prueba en forma de declaraciones juradas de los testigos que la aducirán.

Del otro lado la Regla 192, que añade un fundamento adicional, reza:

> También podrá el tribunal, a solicitud del acusado, conceder un nuevo juicio cuando después de dictada la sentencia sobreviniere el conocimiento de nuevos hechos o de nuevos elementos de prueba de tal naturaleza que evidencien la inocencia del condenado.

Las Reglas 187 a la 191 fueron tomadas del derecho norteamericano y establecen un procedimiento detallado para la solicitud de un nuevo juicio. La Regla 192, atípica en nuestro derecho procesal penal por venir del ordenamiento español, fue incorporada al nuestro posteriormente para viabilizar el recurso de _coram nobis_, también de origen angloamericano.

> "La Regla 192 cristaliza lo que ya había sido enunciado en _Pueblo v. Gerena_ [72 DPR 222 (1951)]: El establecimiento del auto de error _coram nobis_, que puede invocarse por el sentenciado si «sobreviniere el conocimiento de nuevos hechos o de nuevos elementos de prueba de tal naturaleza que evidencien la inocencia del condenado».
>
> Tiene la peculiaridad esta regla de que es la única tomada de la Ley de Enjuiciamie[nt]o criminal española y que en aquella legislación se conoce como la revisión _ex capite novorum o propter nova_, admitida por el artículo 954, [(]4 de la referida Ley de Enjuiciamiento mediante enmienda de 24 de junio de 1933." A. Cintrón García, _Las reglas de procedimiento criminal_, 3 Rev. Der. Prtño. 74 (1963). Véase también _Correa Negrón v. Pueblo_, 104 D.P.R. 286, 297 (1975) y _Pueblo v. Matos Rodríguez_, 91 D.P.R. 635, 638-39 (1965).

El propósito de esta importación doctrinal fue la liberalización del proceso para la obtención de un nuevo juicio.

> "Lo que a nuestro juicio representa la máxima expresión de la tendencia liberalizadora en materia de concesión de nuevos juicios es la incorporación de la Regla 192 que consagraría, por primera vez en nuestro ordenamiento jurídico y procesal, el derecho al Coram Nobis o Coram Vobis, por el cual han habido tantas lanzas eminentes jurisconsultos nuestros." Dpto. de Justicia (J. C. Marchand, H. P. de Rinaldis) _Reglas 187 a 192_ en _Seminario sobre las propuestas Reglas de Procedimiento Criminal_, págs. 244 (1960).

La letra de la Regla 192 es idéntica a la del Art. 954(4) de la Ley de Enjuiciamiento Criminal Española.[1] <u>Pueblo v. Matos Rodríguez</u>, 91 D.P.R. 635, 639 (1965). La bifurcada génesis de esta disposición presenta serios problemas de hermenéutica. Si bien el legislador empleó el texto español al aprobar las reglas que le fueran remitidas por este Tribunal, su intención fue liberalizar el derecho a nuevo juicio mediante la incorporación a nuestro derecho del <u>coram nobis</u> angloamericano. Así pues, ambos elementos son relevantes a su interpretación y deben ser tomados en cuenta.

Por ser el <u>coram nobis</u> una figura del <u>"common law"</u>, para analizar su aplicación en nuestro ordenamiento y su interacción con las demás disposiciones procesales, resulta pertinente recurrir a la interpretación que de él ha hecho la doctrina norteamericana. Sin embargo, para definir los términos e interpretar el lenguaje de la Regla 192, hemos de recurrir también a la doctrina española, pues de ésta proviene el texto de nuestra norma. Todo esto considerando que nuestra Regla, aunque, por su génesis, participa de la naturaleza del Art. 954(4) español y del <u>coram nobis</u> angloamericano, no puede equipararse completamente a ninguno y tiene características particulares. <u>Pueblo v. Ruiz Torres</u>, 127 D.P.R. 612 (1990).

### III.

El recurso de error <u>coram nobis</u> consiste en un remedio post-sentencia que busca la concesión de un nuevo juicio al invocar hechos que no desfilaron como evidencia ante el tribunal sentenciador y que, de haberlo hecho, habrían compelido al Tribunal a dictar sentencia en contrario. Exige la novedad de los hechos aludidos, por lo que, de haberlos considerado el tribunal

---

[1] El Art. 954 de la Ley de Enjuiciamiento Criminal española, reza, en lo pertinente:

> "Habrá recurso de revisión contra las sentencias firmes en los casos siguientes:
>
> [...]
>
> 4° Cuando después de la sentencia sobrevenga el conocimiento de nuevos hechos o de nuevos elementos de prueba, de tal naturaleza que evidencien la inocencia del condenado."

sentenciador, o de haberlos podido considerar a no ser por la falta de diligencia del acusado, no procede el recurso. La diligencia del acusado, sin embargo, no está sujeta a límites de tiempo específicos, y se determina a base de la razonabilidad del momento de presentación del recurso. L. Yackle, Postconviction Remedies, págs. 32-33 (1981).

El writ o recurso de coram nobis se remonta al siglo XVI cuando se originó para permitir la revisión de errores de hecho en las cortes de common law. Entonces a las cortes de instancia les estaba vedada la corrección de sus propios errores y a las superiores sólo se les permitía la corrección de errores de derecho, no de hechos. L. Yackle, op. cit., pág. 39.

> "Thus, [coram nobis] allowed presentation of facts not apparent on the face of the record, such as the death or infancy of a party or an error of the clerk in recording the judgment. The writ could be used only where no other remedy was available and the defendant was 'without negligence' in failing to alert the trial judge to the crucial fact." W. R. LaFave, J. H. Israel, N. J. King, Criminal Procedure, vol. 6, pág. 9 (1999).

Con la expansión del alcance teórico y práctico del recurso de habeas corpus y la aprobación de leyes y reglas, como la 28 U.S.C.A. sec. 2255 (ataque colateral a la sentencia), que concedían remedios post-sentencia conducentes a revocar, corregir o dejar sin efecto una sentencia condenatoria, el recurso de coram nobis se tornó obsoleto. Del historial legislativo de la sección 2255 surge que se estableció para viabilizar un procedimiento que sustituyera el coram nobis. W. R. LaFave, J. H. Israel, N. J. King, op. cit., pág. 128. El lenguaje de la sección 2255 es "prácticamente idéntico" al de nuestra Regla 192.1 de Procedimiento Criminal. Pueblo v. Ortiz Couvertier, 132 D.P.R. 883, 895 (1993).

Las circunstancias en las que puede invocarse la Regla 192, sin embargo, son más extensas que las de estas otras dos figuras. Contrario al habeas corpus, que persigue la excarcelación del detenido y, por tanto, ataca la legalidad de la detención, como a la Regla 192.1, que también requiere que el peticionario esté bajo custodia, el coram nobis busca la anulación **de la sentencia condenatoria** no por su ilegalidad, sino por su incorrección. L. Yackle, op. cit., pág. 33. Por esto el coram nobis está disponible a un convicto aún después de haber cumplido su sentencia. Dada la sofisticada normativa

procesal contemporánea, es usualmente en esta esfera que el coram nobis aún tiene alguna utilidad.

Debemos resaltar que, en nuestra jurisdicción, al momento de aprobarse las Reglas de Procedimiento Criminal de 1963 eran muy limitadas las posibilidades de atacar una sentencia ya dictada. En caso de fraude, podía recurrirse a una moción para dejar sin efecto la sentencia, pero la efectividad de este recurso ante otros supuestos de hecho era incierto. Se requería un procedimiento que permitiese la solicitud de nuevo juicio por el descubrimiento de nuevos hechos aún después de dictada la sentencia. A esto responde la creación de la Regla 192. Su diferencia fundamental con la solicitud de nuevo juicio entonces vigente (hoy la Regla 188, et seq.) era su disponibilidad aún después de dictada la sentencia condenatoria. Su diferencia fundamental con el habeas corpus era la ausencia del requisito de confinamiento. Representó entonces una herramienta más para lograr la anulación de una sentencia patentemente equivocada o injusta.

## IV.

El origen del lenguaje utilizado en la Regla 192 exige además un análisis de la doctrina española en cuanto al recurso de revisión y el nuevo juicio. En España, "el conocimiento de nuevos hechos o de nuevos elementos de prueba, de tal naturaleza que evidencien la inocencia del condenado," Art. 954(4) de la Ley de Enjuiciamiento Criminal, es una de las cuatro causales para la concesión del recurso de revisión. La doctrina española lo define "como el recurso excepcional que puede o debe interponerse sin limitación de plazo, encaminado a obtener un nuevo examen de una sentencia condenatoria firme, cuando se producen o se tiene conocimiento de haberse producido los eventos que en calidad de presupuestos de su admisibilidad establece la ley." M. Fenech, Derecho Procesal Penal, vol. II, pág. 1198 (1960).

La jurisprudencia ha sentado los requisitos para la consideración de una acción bajo el Art. 954(4). **Primero**, que haya recaído sentencia criminal y que la misma sea final y firme, S. del 18 de octubre de 1985, por lo que "carecen de virtualidad los recursos ordinarios y extraordinarios para lograr

su anulación." M. Fenech, <u>op. cit.</u>, pág. 1197 (1960). **Segundo**, que la prueba

presentada sea <u>nueva</u>,

> "debiéndose entender como **nuevos**, todos los hechos o medios probatorios que sobrevengan o se revelen con posterioridad a la sentencia condenatoria, sin que sea preciso que, el condenado, los desconociera durante el transcurso de la causa, bastando con que no hayan sido alegados o producidos ante el Tribunal sentenciador ni descubiertos por la investigación judicial practicada de oficio, sin que, por consiguiente, se repute nuevo al hecho o medio de prueba que, habiéndose puesto en manifiesto durante el proceso, el Tribunal, en uso de la facultad de soberana apreciación, no le concedió valor alguno" S. de 25 de febrero de 1985." (Énfasis en original).

**Tercero**, que el grado de certeza de la prueba sea tan convincente que evidencie

la inocencia del acusado

> "de forma tan exacta y certera que no permita abrigar duda alguna, revelando y resaltando de una parte el error cometido en la Sentencia revisada y de otra notoria inculpabilidad del sancionado por ella, y en su consecuencia la improcedencia de seguir manteniendo la eficacia e impugnabilidad de la cosa juzgada al quedar enteramente probado que la misma fue fundada sobre bases que los nuevos hechos y pruebas aportados han demostrado plenamente estar equivocados como reiteradamente tiene afirmado esta Sala" S. de 14 de junio de 1986. (citas omitidas). Véanse también SS. de 19 diciembre de 1986 y 12 de mayo de 1987.

El recurso de revisión es "la última garantía ofrecida a la justificada

inocencia o inculpabilidad de quien ha sido considerado responsable de

infracción criminal." Busca reconciliar la verdad jurídica con "la auténtica

y plena verdad material, real y extraprocesal". J. Piqué Vidal, J.M.ª Rifá

Soler, L. Saura Lluviá, J.F. Valls Gombau, <u>Los Procedimientos Penales</u> (2ª

ed.), pág. 625 (1987).

**V.**

Fuere interpretada bajo la normativa española o bajo la angloamericana,

es claro que la solicitud de nuevo juicio que viabiliza la Regla 192 es de

carácter extraordinario. Su aplicabilidad debe analizarse en el contexto de

todo el ordenamiento procesal penal. A modo de ejemplo, mediante el Art. 954(4)

se ha logrado rescindir sentencias dictadas no empece la minoridad, y

consecuente inimputabilidad, de un acusado (S. de 7 de mayo de 1984) y anular

otras por constituir doble exposición (S. de 10 de noviembre de 1984) o por

haber error en la identidad del condenado (SS. de 18 de octubre de 1985 y 25

de mayo de 1987).

En el ordenamiento español, estos son casos extraordinarios en los que el citado artículo es el único y último recurso disponible al acusado. Nuestro ordenamiento procesal, en contraste, tiene varias disposiciones que canalizan algunas de estas situaciones, por lo que la aplicabilidad de nuestra Regla 192, en tanto último recurso, ha de ser más limitada. Así procede en un curso paralelo al que ha seguido el <u>coram nobis</u>, en cuanto limita su procedencia a aquellos casos en los que la ley no provee ningún otro remedio adecuado.

En el contexto de las Reglas de Procedimiento Criminal, la Regla 192 se diferencia de la Regla 192.1 en que busca la rescisión de una sentencia por razón del descubrimiento de nuevos hechos, **no de errores de derecho.** <u>Pueblo v. Chévere Heredia</u>, res. 22 de agosto de 1995, 95 JTS 115. Se distingue de un recurso de apelación en que **no se fundamenta en errores de derecho o en la apreciación incorrecta de errores de hecho**, sino que introduce al proceso elementos fácticos completamente nuevos, que no constaban en los autos del tribunal sentenciador y que, de ordinario, no hayan lugar en la revisión de una sentencia. De buscarse la rectificación de una apreciación errónea de la prueba, el procedimiento correcto es la apelación.

Sin embargo, la distinción normativa más importante entre las de Procedimiento Criminal se da frente a la Regla 188. Aunque ambas buscan un nuevo juicio por presentación de nueva prueba, la Regla 192 procede **sólo después de dictada la sentencia**, y su única restricción temporal es el que establece la Regla 189,[2] <u>viz</u>. puede presentarse **en cualquier momento después de dictada la sentencia** siempre que sea dentro de los treinta (30) días de conocida la nueva prueba.[3] Por el contrario, la Regla 188, por disposición

---

[2] Reza la R. 189, en lo pertinente: "La moción de nuevo juicio deberá presentarse antes de que se dicte la sentencia excepto que [...] cuando se fundare en lo dispuesto en la Regla 192 deberá presentarse dentro de los treinta (30) días siguientes a la fecha en que se tuvo conocimiento de los nuevos hechos o de los nuevos elementos de prueba."

[3] Tampoco es posible evaluar los méritos de la moción del peticionario bajo otros criterios. Si bien "[e]l nombre con que se determina un recurso no es determinante de su naturaleza ni debe ser decisivo desde el punto de vista de la función de hacer justicia" <u>Pueblo v. Ruiz Torres</u>, supra, 617, en el caso ante nos no se cumple con los requisitos de ninguna disposición análoga.

expresa de la Regla 189, **únicamente puede invocarse "antes de que se dicte la sentencia"**. No existe, ante la Regla 188, una cosa juzgada criminal, una sentencia advenida final y firme cobijada por la correspondiente presunción de corrección que acompaña todo dictamen judicial.

La moción al amparo de la Regla 192 **sólo puede invocarse después de dictada sentencia** y de ésta haber advenido final y firme, por lo que atenta contra el principio de la cosa juzgada criminal, que es fundamental a la conclusión efectiva de los procesos y la consecución de la justicia. **Al buscar controvertir una sentencia ya recaída, requiere un grado de certeza mayor al ordinario para lograr su concesión.** Del mismo modo, la ausencia de un periodo limitativo posterior al dictamen de sentencia se contrarresta por el grado de persuasión superlativo que ha de tener la nueva prueba para justificar un nuevo juicio.

En esto, el criterio de prueba de la Regla 192 excede el de la Regla 188. En tanto esta última sólo requiere un <u>quantum</u> probatorio que "probablemente habría cambiado el veredicto o fallo del tribunal", la Regla 192 exige que los nuevos hechos traídos a colación "evidencien la inocencia del condenado". Una moción de nuevo juicio al amparo de la Regla 188,

> "sólo procede cuando esta última: (1) no se pudo descubrir con razonable diligencia antes del juicio, (2) no es meramente acumulativa, (3) no impugna la prueba aducida durante el juicio, (4) es creíble, y (5) probablemente produciría un resultado diferente; que dicha moción va dirigida a la discreción del tribunal sentenciador y que, denegada la referida moción por ese foro, este Tribunal no intervendrá con dicha determinación, a menos que se demuestre un claro e inequívoco abuso de discreción por parte del tribunal de instancia." <u>Pueblo v. Chévere Heredia</u>, <u>supra</u>. (citas omitidas)

La disponibilidad de la Regla 192 sólo después de dictada la sentencia, sin embargo, requiere un mayor cuidado al considerar la validez de la nueva prueba presentada. Aunque es bien sabida la regla de hermenéutica que dispone que, ante dudas en su interpretación, los estatutos penales deben entenderse

---

La actual moción de nuevo juicio fue presentada por el peticionario el 27 de noviembre de 1997, a más de dos años de recaída la sentencia de culpabilidad dictada el 30 de junio de 1995. Es evidente la inaplicabilidad de la Regla 188, ya que ésta sólo puede invocarse <u>antes</u> de recaída la sentencia condenatoria, de acuerdo a lo dispuesto en la Regla 189.

de manera que favorezcan al acusado, dicha interpretación no puede menospreciar la intención legislativa.

> "Como parte de la interpretación extensiva, está el principio de que los estatutos penales deben ser interpretados restrictivamente en cuanto a lo que desfavorezca al acusado y liberalmente en cuanto a lo que lo favorezca. **Sin embargo, esta regla de que los estatutos penales deben interpretarse restrictivamente no exige que a las palabras de la ley deba dárseles un significado más limitado que el que usualmente tienen dentro de la realidad social o que deba hacerse caso omiso de la evidente intención del legislador.**" Pueblo v. Sierra Rodríguez, 137 D.P.R. 903, 908 (1995) (citas omitidas y énfasis suplido).

La procedencia de la Regla 192 sugiere una interpretación más restrictiva, en cuanto a la evidencia que satisface su quantum de prueba, que la correspondiente a la Regla 188. Aunque las cinco restricciones a la admisibilidad de nueva prueba establecidas en Pueblo v. Chévere Heredia, supra, ciertamente aplican a la Regla 192, ellas solas no son determinantes a la concesión de un nuevo juicio, pues la Regla 192 requiere evidencia con mayor fuerza persuasiva que la Regla 188.  A la luz de la letra de la Regla 192 y del desarrollo doctrinal de las normas que la originan, entendemos que la prueba requerida para conceder un nuevo juicio después de dictada la sentencia ha de ser tal **que deje clara la inocencia del convicto al punto que la continuación de su encarcelamiento ofenda el sentido de justicia.**[4]

### VI.

Con este trasfondo doctrinal, evaluamos los méritos del recurso ante nos. El Tribunal sentenciador declaró no ha lugar la moción de nuevo juicio del peticionario. Se fundamentó en que Marcano Parrilla no había actuado con diligencia al procurar el testimonio de Roldán Castro y de Orta Fernández pues, dada la publicidad del pleito y la presencia de ambos testigos en Puerto Rico antes de celebrado el juicio, debió haber conseguido sus testimonios. Si, en efecto, el peticionario conocía de la nueva prueba y no la presentó a los treinta (30) días de descubrirla, no habría cumplido con el mandato de la Regla 189 y su moción sería inadmisible.

---

[4] Ejemplos de ésto serían adelantos científicos no disponibles o inexistentes al momento del juicio que hagan empíricamente imposible la atribución de imputabilidad al condenado.

Sin embargo, es innecesario auscultar la diligencia de Marcano Parrilla. Aún si se toma por cierto su testimonio a los efectos de que desconocía de los testimonios noveles antes del 18 de noviembre de 1995, fecha en que Roldán Castro decidió testificar a su favor, **la prueba presentada no cumple con los requisitos que establecimos en <u>Pueblo v. Chévere Heredia</u>**, <u>supra</u> **ni con el elevado <u>quantum</u> de prueba que requiere la Regla 192.**[5]

**VII.**

La prueba principal presentada por el Ministerio Público en el proceso criminal de Marcano García fue el testimonio de Joaquín Lasalle Velázquez, testigo ocular del asesinato. Éste declaró haber llegado al lugar de los hechos ──el residencial Jardines de Condado en Caguas── en su automóvil, un Volkswagen color azul turquesa. Le acompañaba el occiso, Víctor Manuel Pérez Ortiz. Lasalle dijo haber visto allí el automóvil en el que se transportaban Roldán Castro y otro individuo, pero no saber dónde estaban en ese momento.

Allí se les acercó un individuo, al que Lasalle identificó posteriormente como "Machito" (Marcano Parrilla), quien les ordenó que tiraran las armas que portaban. "Machito" llevaba un arma de calibre cuarenta y cinco (45) y le acompañaban otros individuos portando armas largas. Lasalle y Pérez Ortiz lanzaron sus armas ─ de calibre nueve milímetros (9 mm) y cuarenta y cinco (45), respectivamente ─ dentro del Volkswagen. Lasalle preguntó al occiso si conocía al individuo, e indicó que Pérez Ortiz se mostraba sorprendido. Posteriormente, Marcano Parrilla subió su arma, por lo que Pérez Ortiz le dijo "No Machito". Entonces, de una distancia de nueve (9) pies, "Machito" le disparó seis (6) o siete (7) veces. Lasalle corrió hacia la parte de atrás del residencial y sintió dos impactos de bala, uno en la espalda y otro en la pierna. Se escondió en un matorral y esperó hasta el otro día,

---

[5] Cabe mencionar que los casos citados en <u>Pueblo v. Chévere Heredia</u> interpretaban la Regla 188 de Procedimiento Criminal, o el anterior y equivalente Art. 303 del Código de Enjuiciamiento Criminal, no la actual Regla 192. En ese caso extendimos esa interpretación, en cuanto a la cualificación de la prueba para efectos de admisibilidad para efectos de impugnación, a la Regla 192.

cuando fue recogido por una patrulla y llevado al Centro Médico. De ahí regresó a Aguadilla.

El testimonio de Lasalle Velázquez fue corroborado por el del agente Juan Rodríguez Tosado, quien inspeccionó y recopiló evidencia en el lugar de los hechos, incluyendo los vehículos y las dos armas que Lasalle Velázquez mencionara en su testimonio. También lo corroboró el agente Alberto Vélez Torres, quien inspeccionó el lugar en el que Lasalle alega haberse escondido, recibió la evidencia física del agente Rodríguez Tosado, entrevistó a Lasalle Velázquez y le mostró las fotos en las que éste identificó a Marcano Parrilla.

Además, los testigos periciales corroboraron el testimonio de Lasalle. La doctora Ofelia Vera, patóloga, identificó siete heridas de bala en el cadáver del occiso, determinó que éstas eran compatibles con disparos de una distancia de más de dos (2) pies y recuperó del cuerpo tres (3) proyectiles. Héctor Caraballo Olivero, especialista en identificación de armas de fuego, declaró que las armas encontradas en el Volkswagen de Lasalle nunca fueron disparadas y consignó que los proyectiles recuperados en la autopsia procedían de un arma de calibre cuarenta y cinco (45).

Las declaraciones de Lasalle Velázquez, así corroboradas por evidencia independiente, fueron creídas por el jurado y sirvieron de fundamento para la confirmación de la sentencia por el Tribunal de Circuito de Apelaciones.

## VIII.

Mediante su moción de nuevo juicio, el peticionario desea presentar el testimonio de Marcos I. Roldán Castro, alegado testigo ocular de los hechos, y de Elisa Orta Fernández, hermana de quien el peticionario sostiene fue el verdadero asesino, Angel E. Orta Fernández. En la vista sobre moción de nuevo juicio, Roldán Castro declaró haber visto a Orta Fernández, hoy también

fallecido, ultimar a la víctima y no haber visto a "Machito" (el peticionario) en el lugar de los hechos.[6] La hermana de Orta Fernández, en testimonio admitidamente acumulativo, declaró tampoco haber visto a Marcano Parrilla en el lugar de los hechos, situó allí a su hermano antes del asesinato, pero no le vió dispararle a la víctima ni proveyó alguna otra evidencia que le vinculare al crimen. En resumen, ambos testimonios imputan el asesinato a un individuo que nunca antes figuró en este proceso judicial y que hoy está muerto.

Aunque no puede decirse que el testimonio de Roldán Castro es acumulativo o absolutamente increíble, coincidimos con el Tribunal de Instancia y el de Circuito de Apelaciones en que busca contradecir el testimonio de Lasalle Velázquez en cuanto a la presencia del convicto en el lugar de los hechos. Esto no lo hace propiamente impugnatorio, pues no es directamente "pertinente al asunto de [la] credibilidad, es decir, a la veracidad o mendacidad"[7] de Lasalle Velázquez. No obstante, obliga a evaluar estas nuevas declaraciones ante una que "no sólo pasó el crisol de la admisibilidad en un juicio, sino que aún con sus alegadas lagunas fue creído y adjudicado por un jurado a quienes con posterioridad se les mantuvo en su

---

[6] Según expuesto por el Tribunal de Primera Instancia, Roldán Fernández declaró que,

> "[a]l llegar el testigo [Roldán Castro] estaba con su tío y su tía en una bronco (sic) en posición de salida del estacionamiento del residencial. Al llegar Víctor y Joaquín en un "volky" éstos se metieron de frente dentro del "parking" del caserío. Orta, descrito por el testigo como de color oscuro, alto, cabezón, de ojos grandes y hoy fallecido, llegó y le indicó a Víctor que era un "mama bicho". Dió el primer disparo y Joaquín [Lasalle Velázquez] salió corriendo. El testigo pisó (sic) y siguió pa´(sic) Aguadilla. Identificó que Orta y como tres (3) más eran los únicos que estaban allí. Alegó que al peticionario [Marcano Parrilla] el día de los hechos él no lo vió en el lugar, no estaba allí, sólo vió a Orta." Resolución del Tribunal de Primera Instancia del 30 de junio de 1998 (separación de párrafo omitida).

[7] Regla 44 de Evidencia, 32 L.P.R.A. Ap.IV

veredicto aún en apelación hoy final y firme". Resolución del Tribunal de Primera Instancia del 30 de junio de 1998.

A los efectos de la Regla 192, el testimonio de Roldán Castro, por sí mismo, no hace patente la inocencia de Marcano Parrilla al punto de ofender el sentido de justicia, por lo que no basta para ordenar la rescisión de la convicción en esta etapa. En ausencia de una clara determinación que reste toda credibilidad al testigo cuyo testimonio busca refutarse, es insuficiente el nuevo testimonio para inducir un nuevo juicio.

Por los fundamentos expuestos, se confirma la sentencia dictada por el Tribunal de Circuito de Apelaciones. Se dictará la Sentencia correspondiente.


FEDERICO HERNÁNDEZ DENTON
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Pueblo de Puerto Rico

    Recurrido

       Vs.                     CC-1999-178        Certiorari

Jorge Marcano Parrilla

    Acusado-Peticionario

SENTENCIA

San Juan, Puerto Rico, a 22 de noviembre de 2000.

Por los fundamentos expuestos en la Opinión que antecede, que se hacen formar parte integral de la presente Sentencia, se confirma el dictámen del Tribunal de Circuito de Apelaciones.

El Juez Asociado señor Rivera Pérez concurre sin opinión escrita. El Juez Asociado señor Rebollo López disiente con opinión escrita. El Juez Presidente señor Andréu García está inhibido.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

         vs.                  CC-1999-178      CERTIORARI

Jorge Marcano Parrilla

     Acusado-peticionario

Opinión disidente emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ

San Juan, Puerto Rico, a 22 de noviembre de 2000

     Disentimos. En primer lugar, rechazamos como totalmente incorrecta la norma que en el presente caso establece una mayoría de los integrantes del Tribunal a los efectos de que la prueba requerida para conceder un nuevo juicio, al amparo de la Regla 192 de Procedimiento Criminal, ha de ser "exacta y certera, a tal grado que deje clara la inocencia del convicto al punto que la continuación de su encarcelamiento ofenda el sentido de justicia".

     Por otro lado, somos del criterio que la prueba presentada por el peticionario Marcano Parrilla, en apoyo de la moción que radicara al amparo de la mencionada Regla 192, es una que justifica que se deje sin efecto las sentencias

impuéstales al referido peticionario y se ordene la celebración de un nuevo juicio.

I

La Regla 192 de Procedimiento Criminal permite que un "tribunal, a solicitud del acusado, conce[da] un nuevo juicio cuando después de dictada la sentencia sobreviniere el conocimiento de nuevos hechos o de nuevos elementos de prueba de tal naturaleza que evidencien la inocencia del condenado". (Enfasis suplido.)[8] Esta disposición tiene la peculiaridad de haber sido la única tomada de la Ley de Enjuiciamiento Criminal Española, particularmente del inciso cuarto del Artículo 954. Véase: Arturo Cintrón García, Las Reglas de Procedimiento Criminal, Rev. Der. Puertorriqueño, Año III, Núm. 9, Jul.-Sept. 1963, pág.69, 74; Conferencia Judicial de Puerto Rico, Comité sobre Procedimiento Criminal, Texto del Informe Rendido al Tribunal Supremo de Puerto Rico Proponiendo las Reglas de Procedimiento Criminal para el Tribunal General de Justicia de Puerto Rico, San Juan, 1958, pág. 8.

El Artículo 954 de la Ley de Enjuiciamiento Criminal Española, establece cuatro causales que permiten la celebración de un proceso de revisión. Este recurso de revisión es uno de naturaleza excepcional, pues tiene por objeto la revocación de sentencias firmes, atentando así en contra del principio de cosa juzgada. Su finalidad es una de justicia, puesto que reconoce la preeminencia de la verdad sobre la sentencia firme. Por todo ello, sólo se puede acudir a este remedio procesal en los supuestos establecidos en el Artículo 954[9]. Véase: Tribunal Supremo de España, S. de 12 de mayo de 1999, Núm. 8109, Repertorio de Jurisprudencia Aranzadi. Véase también J. Piqué, J.M. Rifá, L. Saura y J.F. Valls, Los Procedimientos Penales, 2da ed., Bosch, Barcelona, 1987, pág. 625. Contrario al procedimiento contemplado en nuestra Regla 192, el procedimiento de revisión español es uno particular reglamentado de forma expresa por los Artículos 954 a 961 de la Ley de Enjuiciamiento Criminal Española.[10]

A pesar de que el texto de la Regla 192 fue copiado, en su mayoría, del Artículo 954(4) de la Ley de Enjuiciamiento Criminal Española, la clara intención de los propulsores de la citada disposición reglamentaria fue reconocer en nuestro ordenamiento procesal criminal el "mismo principio que informa el auto de error Coram Nobis o Coram Vobis". Véase: Conferencia Judicial de Puerto Rico, ante.

En esencia, el recurso de Coram Nobis permite que se pueda modificar o dejar sin efecto una sentencia dictada en un procedimiento criminal, a base de hechos (1) que no surgen de los autos, (2) que existían antes de dictarse la sentencia, y (3) que no eran conocidos por la parte promovente ni por el tribunal, ni podían ser descubiertos por el promovente mediante el ejercicio de razonable diligencia. Correa Negrón v. Pueblo, 104 D.P.R. 286,

---

[8] **34 L.P.R.A. Ap. II.**

[9] **Dicho artículo dispone:**

**"Habrá lugar al recurso de revisión contra las sentencias firmes en los casos siguientes:**

**1º Cuando estén sufriendo condena dos o más personas, en virtud de sentencias contradictorias, por un mismo delito que no haya podido ser cometido más que por una sola.**

**2º Cuando esté sufriendo condena alguno como autor, cómplice o encubridor del homicidio de una persona cuya existencia se acredite después de la condena.**

**3º Cuando esté sufriendo condena alguno en virtud de sentencia, cuyo fundamento haya sido un documento o testimonio declarados después falsos por sentencia firme en causa criminal, la confesión del reo arrancada por violencia o exacción, o cualquier hecho punible ejecutado por un tercero, siempre que los tales extremos resulten también declarados por sentencia firme en causa seguida al efecto. A estos fines . . . .**

**4° Cuando después de la sentencia sobrevenga el conocimiento de nuevos hechos o de nuevos elementos de prueba, de tal naturaleza que evidencien la inocencia del condenado." (Enfasis nuestro.)**

[10] **De acuerdo con el Artículo 957 de la Ley de Enjuiciamiento Criminal Española, el primer paso en el recurso de revisión consiste en la autorización o denegación de la interposición del recurso. Autorizada la interposición, el recurso se sustanciará oyendo por escrito una sola vez al Fiscal y otra a los penados. Luego, el recurso seguirá los trámites establecidos para el recurso de casación. En el caso particular del supuesto cuarto del Artículo 954, "la Sala [Segunda del Tribunal Supremo] instruirá una información supletoria, de la que dará vista al Fiscal, y si en ella resultare evidenciada la inocencia del condenado, se anulará la sentencia y mandará, en su caso, a quien corresponda el conocimiento del delito instruir de nuevo la causa." Artículo 958. Véase M. Fenech, Derecho Procesal Penal, Tomo II, 3era ed., Editorial Labor, 1960, págs. 1209-10. Los nuevos hechos o la nueva prueba presentada, deberán evidenciar la inocencia del acusado de manera exacta, certera y evidente. Tribunal Supremo de España, S. de 11 de marzo de 1994, Núm. 2130, Repertorio de Jurisprudencia Aranzadi.**

292 (1975); David Rivé Rivera, 2da ed., San Juan, 1996, pág. 195. Dicho recurso proviene del "Common Law", donde fue creado en el siglo XVI para permitir la corrección de errores de hechos cometidos por los tribunales. David Rivé Rivera, ante; W.R. LaFave, J.H. Israel y N.J. King, Criminal Procedure, 2da ed., West Group, 1999, sec. 28.1(c), pág. 9.

En la jurisdicción federal, el auto de Coram Nobis ha sido desplazado por otros recursos creados por ley, tales como la moción de nuevo juicio basada en el descubrimiento de nueva evidencia y el auto de *habeas corpus*. W.R. LaFave, J.H. Israel y N.J. King, ante, pág. 10. Su uso se ha limitado a situaciones donde razones de justicia lo exijan. En este sentido, en U.S. v. Morgan, 346 U.S. 502, 511 (1953), el Tribunal Supremo de los Estados Unidos señaló que este recurso será permitido "only under circumstances compelling such action to achieve justice".

Para que proceda el recurso en la esfera federal, el peticionario deberá establecer que no tiene disponible otro remedio, que se cometió un error de carácter fundamental y que existe una justificación para no haber buscado previamente un remedio. W.R. LaFave, J.H. Israel y N.J. King, ante, sec. 28.9(a), págs. 130-31; Moore´s Federal Practice, Motion Attaching Sentence, 3era ed., Lexis Publishing, 2000, sec. 672.02[2][c], pág. 672-39. Véase también C.A. Wright, Federal Practice and Procedure, Vol. 3, 2da ed., West Publishing Co., 1982, sec. 592, págs. 429-30. En aquellos casos donde el recurso se basa en el descubrimiento de nueva evidencia, el peticionario deberá probar también que, a pesar de sus diligencias, la evidencia no pudo ser descubierta antes del juicio, y que la evidencia probablemente conduce a un resultado diferente. Klein v. U.S., 880 F.2d 250, 254 (1989)[11]; U.S. v. Scherer, 673 F.2d 176, 178 (1982).[12]

## II

Al interpretar el alcance de la Regla 192, debemos tener presente que nuestra obligación consiste en imprimirle efectividad a la verdadera intención del legislador, para así garantizar que se cumpla con el propósito para el cual fue creada la medida. En este sentido, hemos señalado que la literalidad de un estatuto puede ser ignorada, si la aplicación literal conlleva un resultado opuesto a la verdadera intención del legislador. Morell Corrada v. Ojeda, res. el 20 de julio de 2000, 2000 TSPR 120. De igual forma, no podemos ejercer nuestra función revisora "en forma irreal, frase a frase, haciendo caso omiso de la sustancia de" la disposición. Alvarez & Pascual, Inc. v. Srio. Hacienda, 84 D.P.R. 482, 492 (1962). Véase también F.S.E. v. J.R.T., 111 D.P.R. 520, 525 (1981).

Del texto de la Regla 192, surge claramente que el fin último de la misma lo es la concesión de un nuevo juicio. El historial legislativo revela que mediante esta disposición, se pretendió reconocer en nuestro ordenamiento procesal criminal, el mismo principio informado por el recurso de Coram Nobis. Debido a ello, y al interpretar y armonizar la totalidad de los términos en que está concebida la Regla 192, forzosamente tenemos que llegar a la conclusión de que la verdadera intención de esta disposición es la concesión y celebración de un nuevo juicio, en cualquier momento posterior a la fecha en que fue dictada la sentencia, a base de hechos que no surgen de los autos, que existían antes de dictarse la sentencia, y que no eran conocidos por la parte promovente ni por el tribunal, ni podían ser descubiertos por el promovente mediante el ejercicio de razonable diligencia.

A pesar de que el texto de la Regla 192, repetimos, fue copiado en su mayoría del inciso cuarto del Artículo 954 de la Ley de Enjuiciamiento Criminal Española, no fue la voluntad de los propulsores de la medida incorporar el proceso de revisión español. La solicitud autorizada por la Regla 192 no contempla un proceso de revisión ante un foro de mayor jerarquía, sino que permite la concesión de un nuevo proceso criminal en el cual no "podrá utilizarse el veredicto o fallo anterior o hacerse referencia a él". Regla 191 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Siendo el fin de la disposición reglamentaria en controversia la concesión de un nuevo juicio, no debe ni puede exigirse al peticionario que evidencie su inocencia de forma exacta, certera e incontrovertible. Esto resultaría contrario a lo promovido por la disposición, pues de lograr establecerse la inocencia del peticionario a tal grado de evidencia, no se justificaría la celebración de un nuevo juicio, sino la absolución inmediata del peticionario. Dicho de otra forma, de quedar evidenciado de forma clara y

---

[11] "When claiming newly discovered evidence, the petitioner must show that due diligence on his part could not have revealed the evidence prior to trial and that the evidence 'would have likely led to a different result.' *Scherer*, 673 F.2d at 178."

[12] A pesar de que la Regla 33 de Procedimiento Civil Federal permite la celebración de un nuevo juicio por el descubrimiento de nueva evidencia, la misma está limitada a un periodo de tres años contados a partir del veredicto o de la declaración de culpabilidad. Debido a ello, cuando haya transcurrido el periodo antes señalado, en la jurisdicción federal se ha permitido recurrir al recurso de Coram Nobis a base del descubrimiento de nueva evidencia. Adviértase que en estos casos, el estándar de prueba requerido es mayor al de la Regla 33 de Procedimiento Civil Federal. U.S. v. McCord, 509 F.2d 334, 340 (1974).

convincente que el peticionario es inocente mediante el proceso establecido por la Regla 192, el resultado del procedimiento necesariamente tendría que ser la anulación absoluta de la sentencia y la mandatoria e inmediata absolución del peticionario, sin la necesidad de trámites ulteriores ya que éstos resultarían ser totalmente innecesarios y superfluos.

No obstante lo anterior, y ante el carácter extraordinario de la medida, somos del criterio que para que proceda una moción de nuevo juicio bajo la Regla 192, resulta claro que los tribunales deberán exigir un grado de prueba mayor al requerido bajo la Regla 188. En el caso de esta última, el nuevo juicio procederá si la nueva prueba descubierta, de haber sido presentada durante el juicio, probablemente hubiese cambiado el veredicto del jurado o fallo del tribunal. Regla 188(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En virtud del lenguaje de la Regla 192, entendemos que la moción presentada bajo esta disposición únicamente debe proceder si los nuevos hechos o los nuevos elementos de prueba tienden a evidenciar o demostrar la inocencia del peticionario. Esa, y no otra, fue la evidente y lógica intención del legislador al incorporar a las Reglas de Procedimiento Criminal la antes mencionada Regla 192.

## II

Atendido lo anteriormente expresado, examinamos brevemente la prueba presentada por el peticionario Marcano Parrilla en el presente caso en apoyo de la moción que radicara al amparo de la Regla 192 de Procedimiento Criminal.

Somos del criterio que la misma transciende los linderos requeridos por la citada Regla 192; esto es, la prueba presentada va más allá de meramente haber podido cambiar el veredicto del jurado o el fallo del tribunal. Dicha prueba, a nuestro juicio, tiende a evidenciar o demostrar la inocencia del peticionario Marcano Parrilla, justificando la misma que se deje sin efecto la sentencia y ordenando la celebración de un nuevo juicio. Veamos.

En primer lugar, debe tenerse consciencia de que el asesinato que se le imputó al peticionario Marcano Parrilla es uno aparentemente producto de la guerra de gangas de delincuentes que desafortunadamente viene afectando a Puerto Rico durante los últimos años, en las cuales todos los participantes son igualmente responsables. En segundo término, el caso del Estado depende exclusivamente del testimonio de un testigo, persona involucrada en esa guerra de gangas.

Debe resaltarse el hecho de que el testimonio de ese testigo fue calificado o caracterizado por el Tribunal de Circuito de Apelaciones --en la sentencia que originalmente emitió confirmando la convicción del peticionario a nivel de instancia-- como uno plagado de "lagunas, contradicciones y omisiones". Igualmente debe enfatizarse el hecho de que el mencionado tribunal intermedio apelativo, en esa misma sentencia, expresó que la investigación llevada a cabo por el Estado, que culminó en la acusación y convicción del peticionario Marcano Parrilla, ciertamente no había sido "un modelo a seguir".

Por otro lado, resulta importante señalar que resulta ser un hecho incontrovertible que la prueba presentada por el peticionario Marcano Parrilla, en apoyo de la moción radicada al amparo de las disposiciones de la Regla 192, no estuvo a su alcance antes o durante el juicio ni antes de que las sentencias impuéstales advinieran finales y firmes. Ello así claramente surge del testimonio que prestara durante el juicio el agente del orden público encargado de la investigación del caso. Este testificó en dicho juicio que el testigo Marcos Isaac Roldán Castro, conocido por "Cachito", no sólo era un testigo material e importante en el caso sino que no había podido dar con su paradero por éste encontrarse prófugo en los Estados Unidos. Dicho sea de paso, el testimonio de este testigo no solo exonera totalmente de la muerte acaecida al peticionario Marcano Parrilla sino que señala a otra persona, por nombre y apellido, como responsable de dichos hechos delictivos.

En fin, somos del criterio que el presente caso es un ejemplo claro de lo que el legislador tenía en mente al incorporar a nuestro sistema de justicia las disposiciones de la Regla 192 de Procedimiento Criminal; esto es, el descubrimiento de nueva prueba que no es meramente de carácter impugnatorio sino que tiende a demostrar la inocencia del convicto por sentencia final.

Es por ello que disentimos.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado