EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ERNESTO RODRÍGUEZ VALLEJO, acusado y apelante.

*Número:* CR-69-176 *Resuelto:* 25 de febrero de 1972

---

*Benjamín Ortiz* y *Graciani Miranda Marchand,* abogados del apelante; *Gilberto Gierbolini, Procurador General,* y *Juan José Ríos Martínez* y *Federico Rodríguez Gelpí, Procuradores Generales Auxiliares,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El apelante y Erbin Maurás Fuentes[1] fueron acusados conjuntamente del delito de hurto mayor, Arts. 426 al 428 del Código Penal, 33 L.P.R.A. secs. 1681 a 1683. El jurado, por votación de nueve a tres, los encontró culpables del delito imputado y fueron sentenciados a cumplir sentencias indeterminadas de 2 a 6 años de prisión. El hecho delictivo consistió en que el día 23 de febrero de 1967 los coacusados representando estar autorizados, sin realmente estarlo, para gestionar el cobro de una cuenta, consiguieron que el perjudicado Jesús Manuel Sánchez Báez les entregara un cheque por la suma

---

[1] El nombre de este individuo aparece en los autos originales escrito de diversas maneras. Unas veces parece como "Erbin," otras como "Elbin," y otras como "Elvin." Es posible que esos nombres sean deformaciones del nombre inglés Irving.

de $300.00 en abono a la misma, apropiándose los coacusados del importe de dicho cheque para beneficio propio.

Los hechos, un poco más en detalle, son como sigue: El perjudicado Jesús Manuel Sánchez adeudaba $429.23 a la firma Construction Machinery Supply Co. Ésta contrató con una agencia de cobros llamada Comercial San Miguel para que le cobrase dicha cuenta. Ángel San Miguel era Presidente de Comercial San Miguel. El apelante y el coacusado, haciéndose pasar por agentes de la agencia de cobros Comercial San Miguel engañaron al deudor Jesús Manuel Sánchez y así obtuvieron de él un cheque por $300.00 para ser supuestamente abonado a la mencionada cuenta. Los coacusados se apropiaron del importe de dicho cheque.

La prueba de defensa estableció un conflicto en la evidencia en cuanto a si los coacusados tenían o no autorización de Comercial San Miguel para gestionar el cobro de la cuenta. Ángel San Miguel, Presidente de la agencia de cobros, admitió que él y un hermano del apelante habían operado la agencia de cobros en sociedad, pero declaró que a la fecha de los hechos ya esa sociedad se había disuelto y también declaró que el apelante nunca trabajó para él ni había sido autorizado a cobrar esa cuenta. En éste y otros extremos la evidencia de cargo y la evidencia de defensa son conflictivas, pero competía al jurado dirimir ese conflicto, ya creyendo a una u otra parte o favoreciendo una hipótesis ecléctica de la evidencia que le mereciera crédito. Creemos que las circunstancias del caso no justifican que intervengamos con las determinaciones que sobre los hechos hizo el jurado. *Pueblo* v. *Iturrino de Jesús*, 90 D.P.R. 706, 712 (1964). No se cometió uno de los tres errores señalados, el cual consiste en impugnar la apreciación de la prueba por el jurado.

Otro error señalado consiste en que "esa prueba no estableció el delito de hurto sino que estableció el delito de falsa representación o de abuso de confianza." No se cometió este

error porque la prueba creída por el jurado demostró la comisión del delito de hurto de mayor cuantía. Veamos.

■ ˙ Como se sabe, el delito de hurto se comete al sustraer, con intención criminal, bienes muebles o semovientes pertenecientes a otras persona, y es de mayor cuantía cuando la propiedad sustraída es de cien dólares o más. 33 L.P.R.A. secs. 1681 y 1683. Constituye abuso de confianza la fraudulenta sustracción o malversación de bienes, por una persona *a quien habían sido confiados.* Art. 445 del Código Penal, 33 L.P.R.A. sec. 1721. La diferencia entre los delitos de abuso de confianza y de hurto consiste en que en el primero el acusado ya está legalmente en posesión de los bienes cuando se los apropia ilegalmente, mientras que en el segundo el acusado, sin estar en posesión legal de los bienes, se los apropia ilegalmente. Por eso hemos dicho que es un elemento del delito de abuso de confianza la relación fiduciaria entre el perjudicado y el acusado. *Pueblo* v. *Ríos,* 69 D.P.R. 830, 833 (1949).

■ En el caso de autos no existe ni existió dicha relación fiduciaria pues los coacusados obtuvieron los bienes (en este caso un cheque) valiéndose de una treta o engaño. Está establecido que la sustracción ilegal, que es un elemento del delito de hurto, puede efectuarse por medio de fraude o de una treta. Fue de fraude y engaño que los coacusados se valieron para obtener la posesión ilegal del cheque y el haber obtenido la posesión en esa forma constituye una sustracción con intención criminal suficiente para sostener el veredicto del jurado por el delito de hurto. *Pueblo* v. *Ríos,* supra, págs. 836–837; *Pueblo* v. *Andrade González,* 88 D.P.R. 862, 864, *in fine* (1963).

Bajo el epígrafe de Falsa Representación e Impostura el Código Penal recoge una serie de situaciones delictivas que no incluyen necesariamente la apropiación ilegal de bienes, tales como la falsa representación para casarse, para servir de fiador, para reconocer documentos, para recibir dinero, para

traspaso fraudulento de bienes, para defraudar, para reventa de propiedad vendida, etc. 33 L.P.R.A. secs. 1811-1823.

◼ El hecho de que exista o pueda existir alguna imbricación(²) (*overlapping*) entre el delito de hurto y algunos artículos del Código agrupados bajo el título de Falsa Representación e Impostura no elimina el delito de hurto según éste está definido por el Art. 426. Es concebible que una situación de hechos pueda constituir hurto, y, por ejemplo, constituir también una violación al Art. 468 del Código Penal, 33 L.P.R.A. sec. 1813—recibir dinero o bienes bajo falsa representación. Eso no quiere decir que debido a esa posibilidad, no pueda castigarse un delito de hurto cuando la acusación, los hechos y la definición de ese delito armonizan completamente. El que se pueda procesar a un acusado bajo un artículo del Código Penal y no se haga, no hace legalmente imposible que se le procese bajo otro artículo que también cubra adecuadamente en ley la situación. El propio Código Penal reconoce esa posibilidad cuando en su Art. 44, 33 L.P.R.A. sec. 90, dispone que un acto u omisión penable de distintos modos *por distintas disposiciones del Código*, podrá castigarse con arreglo *a cualquiera de ellas*, pero en ningún caso bajo más de una.

Como es sabido, nuestro Código Penal procede de los Estados Unidos. Bajo el antiguo *common law* los delitos graves eran castigados con la pena capital y el hurto era considerado delito grave. Andando el tiempo se consideró que era excesivamente severo castigar con la muerte cualquier caso de hurto(³) y los jueces empezaron a distinguir con sutilezas las situaciones para evitar sentenciar a muerte en casos en que hacerlo

_____

(²) Esta imbricación se debe a razones históricas que mencionamos muy brevemente más adelante y ha sido reconocida como una realidad del derecho penal. *Morissette* v. *United States*, 342 U.S. 246, 271 (1952).

(³) Se consideraba delito grave penable con la muerte el hurto cuando la cosa robada excedía de doce peniques *(twelve pence)*, suma que entonces equivalía al precio de una oveja pero que hoy día no alcanza a 25 centavos de dólar. El dinero era entonces más escaso y valía más que ahora.

parecía muy severo. Esta tendencia judicial produjo muchas escapatorias (*loopholes*) en el derecho penal del *common law* y eso trajo como consecuencia a su vez el deseo del legislador de tomar cartas en el asunto. Se aprobaron una serie de estatutos para cubrir casos de apropiación ilegal de bienes que los jueces del *common law* no consideraban hurtos, por las razones antes dichas. Se produjo pues una serie de remiendos que hicieron un tanto deficiente el derecho penal sobre estas situaciones. Producto de esa necesidad que encontró el legislador de llenar lagunas en el *common law* son los delitos legislados de abuso de confianza (*embezzlement*) y de falsa representación (*false personation*).

Esa situación dio margen, tanto aquí como allá, a muchas frustraciones de la justicia en casos de apropiación ilegal de bienes. Por ejemplo, esa división de un acto punible sencillo —la apropriación ilegal de bienes ajenos—al ser dividido en varias modalidades (hurto, abuso de confianza, falsa representación) da margen en los juicios a una serie de planteamientos que no van a los méritos de caso, esto es, si hubo o no la apropiación ilegal.

Lo importante, desde luego, y lo cual debiera ser el elemento esencial en todos los casos de apropiación ilegal de bienes, es si el acusado se apropió ilegalmente o no de unos bienes que no eran suyos. Poco debiera importar para hacer justicia si los hurtó, o si se los apropió luego "de que le fueron confiados," etc. Como bien señalan algunos autores la apropiación ilegal de bienes ajenos debe constituir un solo delito, el cual podría llamarse hurto, pues el nombre no es lo importante, y así se eliminaría la fuente de confusión que constituye la división arbitraria de ese hecho punible en varios delitos estatutarios. Algunas jurisdicciones, nos dice un autor, ya están trabajando en ese sentido: abolir los delitos de abuso de confianza y de falsa representación y cubrir todas esas situaciones, incluyendo la de hurto, con el nombre de hurto (*theft*). Perkins, *Criminal Law*, 1957, págs. 187–190, 240-

243, 252–254; Clark & Marshall, *Law of Crimes*, 6ta. ed., 1958, pág. 706 y ss. (⁴)

■ El tercero y último error señalado es al efecto de que erró el tribunal "al declarar sin lugar una moción de nulidad de veredicto o de nuevo juicio radicada por el acusado antes de dictarse sentencia y al no dar oportunidad al acusado de presentar pruebas sobre manifestaciones de algunos jurados al deliberar sobre el veredicto en cuanto a extremos no cubiertos por la prueba y que eran perjudiciales al acusado." Examinemos la situación alegada en este señalamiento.

Después que el jurado rindió su veredicto y antes de que se dictara sentencia el acusado presentó una Solicitud de Nuevo Juicio en la cual, en lo pertinente, alegó "que las damas y caballeros del jurado . . . recibieron evidencia fuera de sesión, sin que dicha evidencia fuera el resultado de una inspección ocular" y que consideraron el silencio del acusado en perjuicio de éste y le condenaron por no haber explicado qué relación tenía con Ángel M. San Miguel (el presidente de la agencia de cobros). En dicha moción se solicitó que el tribunal celebrara una vista en la cual el acusado aportaría prueba para sustanciar las alegaciones de su solicitud de nuevo juicio.

La solicitud de nuevo juicio no fue acompañada de declaraciones juradas algunas de terceras personas en apoyo de sus contenciones, salvo que fue suscrita y jurada por el peticionario. Posteriormente, y antes que se resolviera sobre la solicitud, el apelante presentó una moción informativa, no jurada, en la cual expresaba que su solicitud de nuevo juicio descan-

---

(⁴) Algo parecido ocurre hoy día en Puerto Rico con el hurto de automóviles y el hurto de uso. Un automóvil en Puerto Rico generalmente vale entre $1,000.00 y $10,000.00. El delito debiera ser uno de hurto, para lo cual es necesario abolir el delito de hurto de uso de automóvil, el cual constituye meramente un delito menos grave. 33 L.P.R.A. sec. 1700. Este último delito proporciona una conveniente escapatoria en muchos casos de hurto de automóviles. Se hurtan en Puerto Rico al año alrededor de 7,000 automóviles—un poco más de 24 cada 24 horas.

saba en el testimonio oral de las Sras. Amelia Rivera de Marcano y Teresa Díaz. La primera había sido miembro del jurado en el caso y sobre la segunda se dice que es estenotipista de la Sala de Bayamón del Tribunal Superior. Dice el peticionario en dicha moción informativa que la Sra. Amelia Rivera de Marcano ha expresado que mientras el jurado deliberaba salió a relucir y fue considerado en dichas deliberaciones que el acusado había matado un hombre, que había salido absuelto y que era un criminal. Sobre Teresa Díaz el peticionario expresa en su moción informativa que otro miembro del jurado, Ramona Vázquez de Fonalledas, le expresó a Teresa que había votado para condenar a los acusados porque éstos no habían declarado ni explicado su relación con San Miguel. También expresa el peticionario que tanto Amelia Rivera de Marcano como Teresa Díaz se han negado a prestar declaraciones juradas sobre esos extremos.

En la vista celebrada para la discusión de la moción de nuevo juicio el apelante no introdujo prueba alguna en apoyo de la moción, sino que se limitó a repetir las alegaciones contenidas en la moción informativa. La defensa informó que las Sras. Rivera Marcano y Teresa Díaz le habían expresado su deseo de no testificar. El tribunal declaró sin lugar la moción de nuevo juicio y expresó que era innecesario citar a las dos señoras porque aun de ser cierto lo que declararan ellas, eso no sería suficiente para mover al tribunal a conceder un nuevo juicio en vista de que un jurado no puede impugnar su veracidad, a tenor con lo resuelto en *Pueblo* v. *Lebrón,* 47 D.P.R. 430 (1934) y *Pueblo* v. *Emmanuelli,* 67 D.P.R. 667 (1947).

Obsérvese que el tribunal no se negó a admitir prueba, como alega el apelante en su señalamiento de error, sino que fue el propio apelante el que no presentó prueba para sustanciar sus alegaciones y se limitó a indicar al tribunal que si su planteamiento era meritorio se citaran a los testigos. El tribunal resolvió que el planteamiento era improcedente y que por lo tanto era innecesario citar a las testigos. De manera

que en ningún momento el tribunal se negó a admitir prueba, sino que la realidad es que las supuestas testigos en cuyos supuestos testimonios orales descansaba la solicitud de nuevo juicio se negaron a declarar. En efecto, lo que pretendió el apelante fue invertir el orden de los procedimientos pues en vez de solicitar la comparecencia de las testigos mediante citación bajo la Regla 235 de Procedimiento Criminal, solicitó que el tribunal resolviese sobre lo de conceder un nuevo juicio sin que previamente se establecieran los hechos sobre los cuales el tribunal pudiese llegar a una determinación.

 Nada hay en los autos que indique que los testigos hubiesen declarado lo que el apelante alega en su solicitud de nuevo juicio y en su moción informativa. El tribunal concluyó que no podía conceder un nuevo juicio basándose únicamente en prueba de referencia—la del propio peticionario—y entendemos que no abusó de su discreción. Como se sabe, las concesiones de nuevo juicio van dirigidas a la sana discreción del tribunal, excepto cuando se presenta evidencia que sustancia alguna de las razones que para conceder nuevo juicio establece la Regla 188 de Procedimiento Criminal. Tal cosa no ocurrió en este caso. Cuando una moción de nuevo juicio está fundamentada en hechos que no constan en el récord, el acusado viene obligado a establecerlos en la vista de la moción mediante evidencia competente, recurriendo, si fuese necesario, a la citación de testigos bajo la Regla 235. No se cometió este tercer error.

*Se confirmará la sentencia apelada.*

El Juez Presidente, Señor Negrón Fernández, no intervino.