EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>   Recurrido<br><br>          v.<br><br>Robert Anel Díaz Morales<br><br>   Peticionario | Certiorari<br><br>2007 TSPR 65<br><br>170 DPR \_\_\_\_ |

Número del Caso: CC-2005-1099
            Ref. CC-2006-532

Fecha: 30 de marzo de 2007

Tribunal de Apelaciones:

                Región Judicial de Humacao

Panel integrado por su Presidente, el Juez Brau Ramírez, el Juez
Colón Birriel y la Jueza Hernández Torres

Abogada de la Parte Peticionaria:

                Lcda. Margarita Carrillo Iturrino

Oficina del Procurador General:

                Lcdo. Alex Omar Rosa Ambert
                Procurador General Auxiliar


Materia: Asesinato en Primer Grado, infracción a los Artículos
         171 y 173 del Código Penal de 1974 y restricción a la
         libertad agravada



Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
        Recurrido                          CC-2005-1099
                                       Ref. CC-2006-532
                                                          *Certiorari*

        v.

Robert Anel Díaz Morales
        Peticionario


*SENTENCIA*


San Juan, Puerto Rico, a 30 de marzo de 2007.

El peticionario, Sr. Roberto Anel Díaz Morales, fue acusado de haber participado en los hechos delictivos que resultaron en la muerte de la señora Kenia Rosario Viera, después de haber sido torturada y sodomizada por varios individuos que penetraron ilegalmente en su residencia. El 12 de marzo de 2004, el peticionario fue sentenciado por los delitos de asesinato en primer grado, escalamiento agravado, robo y 5 años por restricción a la libertad en su modalidad agravada. Las sentencias se cumplirían de

forma concurrentes entre sí, pero consecutivas con cualquiera otra que estuviera cumpliendo el peticionario.

El 7 de abril de 2004, el peticionario recurrió ante el Tribunal de Apelaciones aduciendo, entre otros errores de derecho, que la prueba de cargo no fue suficiente para probar su culpabilidad más allá de duda razonable. El 21 de septiembre de 2005, sin haber sometido aún su alegato, el peticionario presentó ante el Tribunal de Apelaciones una "Moción solicitando autorización para la presentación de solicitud de nuevo juicio ante el TPI". En su moción, alegó que recientemente logró dar con el paradero de un testigo, que no estuvo disponible para el juicio, que podría traer prueba de que el peticionario no estuvo en lugar de los hechos delictivos del caso de autos y que contradiría la identidad de éste como partícipe en la empresa criminal imputada. Solicitó al foro apelativo que paralizara los procedimientos ante su jurisdicción y que autorizara la presentación ante el Tribunal de Primera Instancia de una moción de nuevo juicio.

Mediante resolución notificada el 26 de septiembre de 2005, el Tribunal de Apelaciones denegó la solicitud, por entender que el peticionario no lo puso en condiciones de conocer la naturaleza de la nueva evidencia ni de evaluar la razonabilidad de la misma. El peticionario presentó entonces una moción de reconsideración, en la que explicó con mayor detalle los fundamentos de su solicitud de nuevo juicio, además de incluir como anejo una declaración

jurada sobre la identidad del testigo propuesto y el testimonio que éste proveería que, a su vez, constituye la nueva evidencia ha ser presentada. El Tribunal de Apelaciones denegó la moción de reconsideración del peticionario y le concedió un término final para presentar su alegato.

El peticionario presentó oportunamente un recurso de *certiorari* (CC-2005-1099) ante este Tribunal, en la que alega que erró el tribunal apelativo "al denegar autorización al peticionario para presentar una moción de nuevo juicio ante el Tribunal de Primera Instancia". El 24 de febrero de 2006, denegamos expedir el recurso, por lo que el peticionario presentó una moción de reconsideración. En dicha instancia, le concedimos al Procurador General término para que se expresara en torno a los argumentos esbozados por el peticionario en su recurso. En su comparecencia, el Procurador de opuso a que expidiéramos el auto de *certiorari*. Sus argumentos principales fueron en torno a que la solicitud de nuevo juicio del peticionario no cumple con los requisitos que impone la Regla 192 de Procedimiento Criminal y la jurisprudencia que la interpreta. Además, arguye que la petición de nuevo juicio está viciada fatalmente por ser prematura, debido a que la sentencia del tribunal de instancia no ha advenido final y firme.

Estando ante nuestra consideración el recurso de autos, el Tribunal de Apelaciones dictó sentencia

confirmando la del Tribunal de Primera Instancia. Determinó que el veredicto de culpabilidad del peticionario estaba sustentado por la prueba desfilada por el Ministerio Público. El peticionario Robert Anel Díaz Morales presentó entonces un segundo recurso (CC-2006-532) ante este Tribunal impugnando la determinación del tribunal apelativo.

Examinados ponderadamente los argumentos de las partes, expedimos el auto de *certiorari* solicitado y revocamos la resolución del Tribunal de Apelaciones que deniega la moción de nuevo juicio del peticionario. Por tanto, se autoriza al peticionario a presentar ante el Tribunal de Primera Instancia su moción de nuevo juicio al amparo de la regla 192 de Procedimiento Criminal y se ordena que mantenga informado a este Tribunal sobre el resultado de su solicitud. Asimismo ordenamos se devuelvan los autos originales del caso al Tribunal de Primera Instancia para que se proceda según lo dictaminado en la sentencia que pronunciamos el día de hoy.

En consecuencia, y al amparo de las reglas 20 y 50 de nuestro reglamento, paralizamos el trámite apelativo del recurso de *certiorari* CC-2006-532, cuya expedición se encuentra ante la consideración de este Tribunal, hasta tanto el Tribunal de Primera Instancia resuelva la petición de nuevo juicio objeto del recurso de autos.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. La Jueza Asociada señora Fiol

Matta emitió una opinión de conformidad a la cual se une el Juez Asociado señor Fuster Berlingeri. El Juez Asociado señor Rivera Pérez y la Jueza Asociada señora Rodríguez Rodríguez disienten sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
        Recurrido


        v.                          CC-2005-1099
                            Ref. CC-2006-532    *Certiorari*

Robert Anel Díaz Morales
        Peticionario


        Opinión de conformidad de la Jueza Asociada señora FIOL MATTA a la cual se une el Juez Asociado señor FUSTER BERLINGERI


San Juan, Puerto Rico, a 30 de marzo de 2007.

En el caso de autos, el señor Robert Anel Díaz Morales solicita la revisión de una resolución del Tribunal de Apelaciones que declaró no ha lugar una moción solicitando autorización para la presentación de una solicitud de nuevo juicio ante el Tribunal de Primera Instancia. Expedido el auto, este Tribunal revoca mediante sentencia al foro apelativo y autoriza al peticionario a presentar ante el Tribunal de Primera Instancia su moción de nuevo juicio. Resuelve así que el foro apelativo debió haber permitido al peticionario la oportunidad de solicitar un nuevo juicio al

tribunal que lo sentenció, antes de resolver la apelación de la sentencia condenatoria que tenía ante su consideración. Estoy completamente de acuerdo con esa determinación. No obstante, al considerar los argumentos del Procurador General, me parece oportuno hacer unas expresiones sobre el efecto de la presentación de una moción de nuevo juicio durante el trámite apelativo. A continuación expreso las razones que ameritan mi voto de conformidad.

I

Aunque en la sentencia que emitida por el Tribunal en el día de hoy contiene una descripción básica del tracto procesal del caso de autos, es preciso describir con mayor detalle los hechos que dan pie a la controversia ante nuestra consideración.

Por unos hechos acaecidos el 23 de octubre de 2001, el peticionario fue sentenciado a cumplir las siguientes penas de reclusión: 99 años por el delito de asesinato en primer grado; 18 años por el delito de escalamiento agravado; 50 años por el delito de robo y 5 años por restricción a la libertad en su modalidad agravada. El tribunal concluyó que el peticionario participó junto a otros individuos en la empresa criminal en la que éstos penetraron en la residencia de la señora Kenia Rosario Viera con el propósito de cometer el delito de sodomía y robo domiciliario. La víctima murió a consecuencia de quemaduras extensas, producto de la tortura a la cual fue sometida, y por sepsis como complicación tardía.

Los hechos que describimos a continuación fueron estipulados por las partes en la exposición narrativa de la prueba. En la primera entrevista que realizara la policía a la víctima, ésta manifestó que fue atacada en su hogar por tres individuos.[1] La agente Limaris Cruz Vélez de la Unidad de delitos sexuales de Humacao era la oficial a cargo de la investigación del caso. El hogar de la víctima, y escena de los hechos, fue fotografiado por la Policía. Se ocuparon varias piezas de evidencia y se levantaron huellas dactilares del interior de la residencia.[2] Entre los objetos que se reportaron hurtados de la residencia se encontraba el celular que pertenecía a la víctima.

Al estudiar las facturas del celular, la agente Cruz se percató que éste se estaba utilizando en el pueblo de Gurabo. La Policía dio con el paradero del celular por medio de un equipo de rastreo de la Unidad de Robos a Bancos del Centro de Investigaciones Criminales.[3] Se lo ocuparon a Roberto Anel Díaz Morales el 9 de noviembre de 2001, a quien la agente identificó como el peticionario durante el juicio. Según la agente, el peticionario le expresó que él le había comprado el celular a un "tecato", cuya descripción se ajustaba a la de uno de los imputados, Irving Daniel Carrasquillo Oliveras, a quien llaman Danny el Flaco. El peticionario, incluso, la

---

[1] Exposición Narrativa de la Prueba, pág. 13 (Anejo 8 del recurso).
[2] Id. págs. 2-6, 41-44.
[3] Id. págs. 45-47.

llevó a la residencia de éste.[4] De la factura del celular de la víctima se desprende que el mismo se empezó a utilizar el 28 de octubre de 2001, fecha en la que el peticionario alegó haber adquirido el celular de uno de los imputados.[5]

A través de información suministrada por la Policía del distrito de Gurabo, la agente Cruz intervino con José Luis Delgado Pérez, conocido como Luis Caneca. Para la época de los hechos y la investigación, Caneca era adicto crónico a la heroína, consumiendo de tres a cuatro bolsas diarias.[6] Debido a su condición, las entrevistas con Caneca eran difíciles de realizar, ya que, según la agente Cruz, cada vez que hablaba con él "se enteraba de algo diferente", que en muchas ocasiones resultaba ser contrario a los hallazgos de la investigación.[7] El testimonio de Caneca como coautor confeso de los mismos hechos delictivos fue la prueba principal contra el peticionario durante el procedimiento criminal llevado en su contra.

Luis Caneca declaró en las entrevistas que le realizó la Policía y ante el tribunal que para poder sustentar su vicio éste realizaba "chiverías" en la plaza del pueblo de Gurabo. El día de los hechos el señor Ismael Román, conocido como Manco, con la excusa de que le realizara un "chivo", lo abordó para que lo acompañara a una plaza en

---

[4] Id. pág. 47.
[5] Id. pág. 55.
[6] Id. pág. 34.
[7] Id. pág. 47.

Humacao y a la casa de la víctima. Una vez llegaron a la casa de la víctima, Manco le indicó a Caneca que tenía acceso a esa casa y que quería que "se metiera allí a robar, a violar, a cortar y a quemar".[8] De regreso a Gurabo, Manco le indicó al declarante que consiguiera a otros "tecatos" para realizar la empresa criminal que antes habían discutido en Humacao. Caneca compró una bolsa de drogas con el dinero que Manco le dio, y después de consumirla se quedó dormido.[9]

En la tarde, Caneca se dirigió hacia la plaza de Gurabo y allí se encontró al Manco que había llegado con Irving Daniel Carrasquillo Oliveras, conocido como Danny el Flaco, y con Quenepo, a quien el declarante identificó como el peticionario. Caneca declaró que Quenepo era "un tecato igual que él" y que se había metido droga antes con éste. Al llegar, Quenepo le pidió al declarante que fuera a comprarle una bolsa de heroína.[10] Quenepo y el declarante consumieron la droga juntos, y según éste último: "[Quenepo] tenía su gancho y yo el mío".[11] Los tres se montaron en el carro de Manco. Caneca declaró que se quedó dormido camino a Humacao debido a la cantidad de droga que había consumido en el día.[12] Una

---

[8] Id. págs. 27-28.
[9] Id. pág. 28.
[10] Id. pág. 35.
[11] Id. pág. 35.
[12] Durante el contrainterrogatorio, Caneca respondió que el máximo de tiempo que podía estar "sin meterse droga" era de una hora a hora y media. Además, señaló que cuando no estaba drogado o se le pasaba el efecto de la droga consumida "le daba dolor en los huesos, náuseas, diarrea. . . no funcionaba". Id. pág. 35. Según los

vez llegaron a la casa de la víctima, Manco le entregó a sus acompañantes navajas, y les indicó que podían llevarse todo lo que quisieran de la casa. Cuando entraron en la residencia, el declarante indicó que tanto él como Quenepo permanecieron en la cocina, mientras que Danny y Manco fueron a uno de los cuartos. En específico, Caneca declaró que Quenepo estuvo en la cocina, revisando la nevera y los gabinetes.[13]

Posteriormente, Caneca se dirigió al cuarto en el cual se encontraban Danny y Manco sodomizando a la víctima Kenia Rosario. El declarante confesó que él también participó en estos actos, mientras que Quenepo se limitó a registrar las pertenencias de la víctima en el cuarto.[14] Según Caneca, Quenepo se llevó del cuarto un teléfono celular negro Nokia que pertenecía a la víctima.[15] Antes de retirarse de la habitación, el declarante y Danny cortaron con navajas los muslos de la víctima. Por orden de Manco, Danny introdujo unos trapos en los genitales de la víctima y luego les prendió fuego. Una vez concluida la empresa criminal, y de vuelta a Gurabo, al declarante lo dejaron en la plaza, y los demás se retiraron con Manco en el vehículo. El declarante

---

hallazgos de la investigación de la agente Cruz, "los individuos estuvieron en la casa de Kenia de tres a cuatro horas". Id. pág. 51. A pesar de esto, y según las declaraciones de Caneca, durante este periodo de tiempo éste pudo participar activamente en la violación de la víctima y recordar con detalle los hechos acontecidos.
[13] Id. pág. 30.
[14] Id. págs. 30-31.
[15] Id. pág. 32.

indicó que no volvió a ver a Quenepo hasta unos días después en un Mitsubishi Technica gris, cuando le dijo que la Policía lo andaba buscando, y lo amenazó para que no divulgase nada.[16]

En las entrevistas iniciales con la agente Cruz, Caneca indicó que quienes participaron de la empresa criminal eran Manco, Danny y un tal Prieto.[17] Durante su testimonio en el juicio expresó que inicialmente no incluyó a Quenepo como uno de los participantes, porque lo "estimaba mucho" y "no se atrevía a decir que andaba con él ese día".[18] Incluso al Fiscal a cargo del caso le habló de la presencia de Prieto el día de los hechos, sin mencionar la de Quenepo.[19] La agente Cruz declaró en el juicio que hizo todas las gestiones necesarias para dar con el paradero de Prieto, buscando en el fichero de la Policía e indagando en el área sobre cuántas personas había conocidas con dicho apodo. Pese a todos sus esfuerzos no encontró a Prieto, sin embargo llegó a la conclusión de que Prieto y Danny eran la misma persona para Caneca. Eventualmente Caneca confesó a la agente que Prieto no existía, que "él se lo inventó", y desde entonces incluyó a Quenepo en su versión de los hechos.[20] A pesar de las inconsistencias en el testimonio de

---

[16] Id. págs. 33-34.
[17] Id. pág. 36, 52.
[18] Id. pág. 36.
[19] Id. pág. 36.
[20] Id. pág. 36.

Caneca, y su aparente enajenación de la realidad,[21] la agente Cruz reconoció que éste era uno de los testigos esenciales del caso ya que fue a base de su testimonio que se presentaron los cargos contra el peticionario.[22]

Durante una de las entrevistas, Caneca le mencionó a la agente Cruz que conocía a dos personas en Gurabo con el apodo de Quenepo: un tal Javier del Barrio Celada y al peticionario.[23] La investigación apuntaba a que el Quenepo que participó en los hechos era un "tecato" habitual que consumía heroína con Caneca, mientras que en las entrevistas que le realizaron, el peticionario indicó que era estudiante activo de la Universidad del Turabo. A pesar de esto, la agente Cruz no entrevistó al otro Quenepo, ni tampoco intentó aclarar la identidad de los dos sujetos que eran conocidos con el mismo apodo. Ni siquiera indagó si este otro Quenepo era adicto a drogas intravenosas y si solía andar con alguno de los imputados en el caso.[24] Sin investigar la existencia de un segundo Quenepo, la agente manifestó que "ella tenía bien claro quién era un Quenepo y quién era el otro Quenepo. Ella ya tenía a su Quenepo".[25] Durante el juicio se le preguntó si no buscó en el fichero de la Policía al Quenepo de nombre Javier, a lo que la agente replicó "que

---

[21] Id. pág. 39. Luis Caneca al momento de declarar desconocía cuántos minutos tenía una hora, ni cuántos días hay en una semana o un mes. Durante el redirecto confesó no saber cuánto tiempo llevaba declarando. Véase id.

[22] Id. pág. 51.

[23] Id. pág. 38, 53.

[24] Id. pág. 81.

[25] Id. pág. 53.

no buscó.  No tenía que chequear porque sabía quién era Quenepo"[26] y porque "ella no estaba investigando al Quenepo de nombre Javier".[27] Indicó que el Quenepo que describió Caneca como "bajito, que tenía el pelo ni lacio ni malo, con mellita" era el peticionario.[28]

Entre los testimonios que presentó la defensa, se destaca el de la señora Ana Celia Quiñones.  Esta declarante, quien era testigo de cargo pero fue puesta a disposición de la defensa, ha residido toda su vida en Gurabo y es dueña de una cafetería en la calle principal del pueblo.  La señora Quiñones testificó que desde hace varios años conoce a Luis Caneca.  También declaró que conoce a una persona de nombre Quenepo en Gurabo que era usuario de drogas, que se pasaba con Luis Caneca y que juntos iban a "curarse al lado del negocio de ella".[29] Sin embargo, no identificó a éste como el peticionario, indicando que "no ha visto a Quenepo en el tribunal".[30] En el juicio también testificó Danny el Flaco, quien declaró no conocer al peticionario y que sólo lo había visto en una ocasión anterior.  Testificó que esa ocasión fue el domingo 28 de octubre de 2001, cuando le vendió al peticionario el celular que había hurtado de la residencia de la víctima de los hechos de autos.[31] Danny señaló que aun cuando el robo fue el día 23 de octubre,

---

[26] Id. pág. 56.
[27] Id. pág. 83.
[28] Id. pág. 79.
[29] Id. págs. 88-89.
[30] Id. pág. 89.
[31] Id. pág. 95.

no utilizó el celular en todo el tiempo en que estuvo en su posesión ya que su intención era venderlo para comprar droga.[32]

Durante el juicio también se presentó el análisis de todas las huellas dactilares levantadas por la Policía en la residencia de la víctima. El resultado fue negativo en cuanto al peticionario Robert Anel Díaz Morales.[33] De las pruebas de DNA realizadas a muestras de sangre y pelo recogidas en la escena de los hechos, ninguna correspondía con el perfil genético del peticionario.[34] La agente Cruz también señaló que a pesar de haberle tomado muestras de sangre al peticionario, y de tener conocimiento de que el Quenepo que participó en los hechos consumía heroína, no ordenó una prueba toxicológica (*tox drug screen*) del peticionario para corroborar su identidad.

En el juicio también se examinó, bajo la Regla 9 de Evidencia, el testimonio del Dr. Gualberto Herrero Manzano. Al momento de testificar, el doctor Herrero se desempeñaba como médico en el área de admisiones de la Penitenciaria Estatal de Río Piedras, realizando exámenes físicos y evaluaciones dentales y psicológicas de los confinados de encarcelamiento reciente en dicha institución. El doctor declaró que revisó al peticionario cuando éste fue encarcelado. En aquel momento, el peticionario confesó que utilizaba

---

[32] Id. pág. 96.
[33] Id. pág. 50. Véase también id. pág. 5.
[34] Id. pág. 72.

marihuana.[35] En el examen físico que se le realizó al peticionario se le revisó de pies a cabeza para, entre otras cosas, verificar si tenía alguna marca de aguja hipodérmica o algún otro indicativo de uso intravenoso de drogas. Cuando examinó al peticionario, no se encontró en su piel ningún signo de trauma por uso de agujas.[36] Por tanto, indicó que el peticionario no presentaba ninguna evidencia de que fuera usuario de drogas intravenosas al momento de ser examinado ni en el pasado inmediato.[37] En el contrainterrogatorio, el galeno señaló que un usuario de drogas intravenosa podría no presentar trauma en la piel si ha comenzado recientemente en el vicio, si se inyecta en lugares distintos en cada ocasión, o si la consume nasalmente.[38] En el caso del peticionario, sólo se indicó en el expediente que era usuario de marihuana porque eso fue lo que él informó al momento de ser ingresado en la penitenciaria. Declaró que tampoco se ordenó hacer una prueba de dopaje al peticionario.[39] El tribunal denegó la admisión del testimonio del doctor Herrera, por entender que podría causar confusión al jurado. Razonó que como el examen se realizó el 30 de agosto de 2002, esto es diez (10) meses después de ocurridos los hechos imputados, el médico no

---

[35] Id. pág. 90.
[36] Id. pág. 90.
[37] Id. págs. 90-91.
[38] Id. pág. 91.
[39] Id. pág. 92.

podía establecer de forma contundente si para cuando se cometió el delito el peticionario era o no un adicto.[40]

A base de la prueba desfilada, el jurado emitió un veredicto de culpabilidad. El 12 de marzo de 2004, el Tribunal de Primera Instancia impuso al peticionario las condenas antes señaladas. Inconforme, el 7 de abril de 2004, el peticionario presentó una apelación por derecho propio ante el Tribunal de Apelaciones. En dicho recurso, el peticionario alegó que el tribunal de instancia erró al declararlo culpable a base de prueba insuficiente que no estableció su culpabilidad más allá de duda razonable, y al excluir el testimonio del doctor Herrera Manzano.

El 21 de septiembre de 2005, el peticionario solicitó al Tribunal de Apelaciones su autorización para presentar una solicitud de nuevo juicio ante el Tribunal de Primera Instancia. Alegó que durante el procedimiento penal en su contra estuvo haciendo las gestiones pertinentes para localizar al otro Quenepo de Gurabo para que testificara en el juicio, pero no fue hasta ese momento que había logrado dar con su paradero porque se encontraba fuera de Puerto Rico. Este testigo, arguyó, podía declarar que el peticionario no estuvo presente en el lugar de los hechos, además de traer prueba que contradijese su identidad como partícipe en la empresa criminal imputada.

---

[40] La defensa recurrió ante el Tribunal de Apelaciones, el cual denegó el recurso presentado. A su vez, se presentó un recurso ante este Tribunal, el cual declaramos no ha lugar.

Por tanto, solicitó al Tribunal de Apelaciones que paralizara el trámite apelativo y autorizara la presentación de una moción de nuevo juicio al amparo de la Regla 192 de Procedimiento Criminal ante el tribunal de instancia. El foro apelativo, mediante resolución notificada el 26 de septiembre de 2005, denegó la solicitud del peticionario. Determinó que el solicitante no colocó al tribunal "en condiciones de conocer la naturaleza de la nueva prueba ofrecida ni de evaluar la razonabilidad de su solicitud, en esta etapa".

El peticionario presentó oportunamente una moción de reconsideración. Reiteró y explicó más detalladamente los argumentos esbozados en su moción anterior, revelando que la nueva evidencia que buscaba presentar era el testimonio del otro Quenepo. Además, adjunto a la moción incluyó una declaración jurada de Javier Francisco Sánchez González, en la que este último declara que es la única persona conocida como Quenepo en el pueblo de Gurabo. Además revela que él era la persona con la que Luis Caneca compartía droga y a la que éste se refirió durante su testimonio. A su vez, el señor Sánchez González alega que Caneca mintió en el juicio contra el peticionario y manifiesta su disposición para declarar en un nuevo juicio.

El Tribunal de Apelaciones declaró sin lugar la moción de reconsideración. Aún inconforme, el peticionario presentó un recurso de *certiorari* (CC-2005-1099) ante este Tribunal. Alegó que el tribunal

apelativo erró al no permitirle presentar la moción de nuevo juicio ante el tribunal de instancia, a pesar de que ésta cumplía *prima facie* con los requisitos pertinentes. El 24 de febrero de 2006, denegamos la expedición del recurso. El peticionario presentó oportunamente una moción de reconsideración. Concedimos al Procurador General término para que se expresara en torno al recurso presentado por el peticionario.

El Procurador General compareció en un escrito en cumplimiento de orden oponiéndose a la expedición del recurso. En esencia, arguye que la petición de nuevo juicio del peticionario no cumple con los requisitos de la Regla 192 de Procedimiento Criminal: que la prueba que sustenta la moción sea nueva y que evidencie la inocencia del acusado. En cuanto a la novedad de la evidencia que se presenta, razona que el peticionario presentó el argumento de la existencia de un segundo Quenepo durante el juicio y no convenció al jurado de su inocencia. En cuanto al segundo requisito, el Procurador señala que el Quenepo de nombre Javier no se inculpa del delito en su declaración jurada, por lo que dicho escrito no evidencia manifiestamente la inocencia del peticionario. Además, nos indica que la moción de nuevo juicio no aduce cuál es la naturaleza del testimonio de Sánchez González ni cómo el mismo constituye nueva prueba. Por último, expone que uno de los requisitos para que se pueda considerar una moción de nuevo juicio es que la sentencia haya advenido final y firme. Por eso arguye que la petición de nuevo

juicio en este caso es prematura, pues el caso aún se encuentra en etapa apelativa.

Estando ante nuestra consideración el presente recurso, el Tribunal de Apelaciones confirmó la sentencia del Tribunal de Primera Instancia que condenó al peticionario. Concluyó que el veredicto de culpabilidad del peticionario estaba sustentado por la prueba desfilada por el Ministerio Público, y que no había errado el jurado al darle credibilidad a José Luis Delgado, a pesar de las inconsistencias en su testimonio. Así las cosas, el peticionario presentó un segundo recurso de *certiorari* (CC-2006-532) ante este Tribunal impugnando la sentencia del tribunal apelativo.

Antes de explicar los argumentos que entiendo justifican la decisión que tomó este Tribunal en el caso de autos, debemos repasar brevemente la normativa jurídica aplicable.

II

Nuestro ordenamiento procesal penal provee para la concesión de un nuevo juicio como una de las salvaguardas más eficaces de la administración de la justicia en un sistema acusatorial basado en la presunción de inocencia de todo acusado. Así reconoce, en circunstancias excepcionales, la preeminencia de la verdad sobre el principio de cosa juzgada contenido en una sentencia firme.[41]

---

[41] Una determinación de nuevo juicio coloca a las partes en una situación igual a si no se hubiera

Entre los fundamentos para que un tribunal ordene la celebración de un nuevo juicio, ya sea a instancia propia con el consentimiento del acusado o a solicitud de éste, se encuentra el de conocimiento de nuevos hechos o nuevos elementos de prueba que de haber estado disponibles hubiesen alterado el resultado del proceso anterior. Las Reglas de Procedimiento Criminal proveen dos mecanismos para la concesión de un nuevo juicio por este fundamento. La regla 188 puede ser invocada a estos efectos en moción fundamentada y por escrito presentado ante el tribunal de instancia antes de que se dicte sentencia. Por otro lado, la regla 192 permite presentar esta moción después de dictada la sentencia, con la única condición de que sea dentro de los treinta (30) días siguientes a la fecha en que se tuvo conocimiento de los nuevos hechos o elementos de prueba. Véase Regla 189 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

La regla 192 de Procedimiento Criminal dispone:

> También podrá el tribunal, a solicitud del acusado, conceder un nuevo juicio cuando después de dictada la sentencia sobreviniere el conocimiento de nuevos hechos *o de nuevos elementos de prueba* de tal naturaleza que evidencien la inocencia del condenado. 34 L.P.R.A. Ap. II (énfasis suplido).

---

celebrado el juicio original. Se revoca el veredicto anterior y el Ministerio Público tiene que presentar nuevamente toda la evidencia necesaria para probar su caso. Durante el nuevo juicio no puede hacerse referencia al veredicto o fallo anterior, y por razones de doble exposición el Ministerio Público no puede acusar por un delito de mayor grado o gravedad de aquél por el cual fue convicto la persona procesada. Véase Regla 191 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; División de Investigaciones y Asuntos Criminales del Departamento de Justicia, Seminario sobre las propuestas Reglas de Procedimiento Criminal, San Juan, 1960, págs. 241-46.

Procede esta regla del inciso 4 del artículo 954 de la Ley española de Enjuiciamiento Criminal sobre revisión *ex capite novorum* o *propter nova*, e instituye en Puerto Rico el principio que informa al auto de *coram nobis*, pero limitado a la concesión de un nuevo juicio.    Cabe destacar que esta regla es la única que incorporamos del ordenamiento procesal penal de España.    Comité sobre Procedimiento Criminal de la Conferencia Judicial de Puerto Rico, <u>Texto del Informe Rendido al Tribunal Supremo de Puerto Rico Proponiendo las Reglas de Procedimiento Criminal para el Tribunal General de Justicia de Puerto Rico</u>, San Juan, 1958, pág. 8; Arturo Cintrón García, <u>Las reglas de procedimiento criminal</u>, Núm. 9, Revista de Derecho Puertorriqueño, pág. 74 (1963).

La incorporación de esta disposición manifiesta la máxima expresión de la tendencia liberalizadora que adopta nuestro ordenamiento jurídico en materia de concesión de nuevos juicios.    División de Investigaciones y Asuntos Criminales del Departamento de Justicia, <u>op. cit.</u>, pág. 244.    Sin embargo, a diferencia del auto de *coram nobis*, una moción al amparo de la regla 192 limita la concesión de un nuevo juicio a situaciones en que la inocencia de un convicto esté en controversia.    David Rivé Rivera, <u>Recursos Extraordinarios</u>, 2da ed., San Juan, Programa de Educación Jurídica Continua de la Facultad de Derecho de la Universidad de Puerto Rico, 1996, pág. 195.

En reiteradas ocasiones, hemos señalado que una moción de nuevo juicio fundamentada en el descubrimiento de nueva prueba procede sólo cuando dicha prueba: (1) no pudo descubrirse con razonable diligencia antes del juicio, (2) no es meramente acumulativa, (3) no impugna la prueba presentada durante el juicio, (4) es de naturaleza creíble, y (5) probablemente produciría un resultado diferente si se concediera el nuevo juicio. Véase, e.g., Pueblo v. Chévere Heredia, 139 D.P.R. 1, 23 (1995); Pueblo v. Beltrán, 73 D.P.R. 509, 519 (1952): Pueblo v. Morales, 66 D.P.R. 10, 20-21 (1946). Al interpretar este último criterio, hemos establecido que la nueva prueba que se busca presentar a través de esta moción requiere un grado de certeza mayor al ordinario para lograr la concesión de un nuevo juicio.

En Pueblo v. Marcano Parrilla I, 152 D.P.R. 557, 571-572 (2000), indicamos que la prueba requerida para conceder un nuevo juicio bajo la regla 192 "ha de ser tal que deja clara la inocencia del convicto al punto que la continuación de su encarcelamiento ofenda el sentido de la justicia". Más recientemente reconsideramos esta norma y reconocimos que ese estándar de prueba, que requiere evidenciar la inocencia de quien solicita un nuevo juicio de forma exacta, certera e incontrovertible, es muy oneroso para el promovente de la moción. Véase Pueblo v. Marcano Parrilla II, 2006 T.S.P.R. 136 (en reconsideración). Tomando en consideración el fin último de la regla 192 de liberalizar el derecho a obtener un

nuevo juicio, resolvimos que la nueva prueba sólo debe demostrar que es más probable que el convicto sea inocente a que sea culpable. Bajo la norma que establecimos en ese caso, un nuevo juicio bajo la regla 192:

> resulta procedente si, analizando la nueva evidencia junto a la presentada en el juicio original de la forma más favorable al fallo o veredicto de culpabilidad que se impugna, *la misma pudo haber creado duda razonable en el ánimo del juzgador, en cuanto a la culpabilidad del peticionario*. Id. pág. 21 (énfasis suplido).

Conforme a esto, un tribunal debe ordenar la celebración de un nuevo juicio cuando la nueva evidencia tienda a demostrar que hay una probabilidad razonable de que el resultado del nuevo juicio sea distinto al que produjo la sentencia condenatoria.

El análisis de los criterios antes señalados para la concesión de un nuevo juicio, al igual que la consideración de la norma que establecimos recientemente en Pueblo v. Marcano Parrilla II, supra, debe corresponder inicialmente al *tribunal sentenciador*. Esa determinación descansa en la sana discreción de ese foro y merece la deferencia de los tribunales apelativos, a menos que se demuestre un claro e inequívoco abuso de discreción. Pueblo v. Chévere Heredia, supra, pág. 23; Pueblo v. Prieto Maysonet, 103 D.P.R. 102, 13 (1974); Pueblo v. Rodríguez Vallejo, 100 D.P.R. 426, 435 (1972). En Pueblo v. Morales, supra, pág. 21, destacamos el hecho de que habiendo oído y aquilatado toda la prueba en un procedimiento criminal, el tribunal sentenciador está en

mejor posición para determinar si se debe conceder un nuevo juicio debido a la disponibilidad reciente de prueba que no consta en los autos del caso. Es el tribunal de instancia el más adecuado para evaluar la nueva prueba a la luz de toda la evidencia presentada durante el juicio original y que condujo al veredicto o fallo condenatorio.[42] Además, el foro de instancia puede precisar qué peso tendría la nueva prueba para efectos del veredicto y puede apreciar directamente la credibilidad que ésta merezca al considerar la moción.

_____

[42] En el derecho procesal en Estados Unidos se ha entendido que ordinariamente el foro mejor capacitado para adjudicar si procede una moción de nuevo juicio es el del mismo juez que sentenció al convicto. Wharton's Criminal Procedure, 13ra edición, Clark Boardman Callaghan, 1992, volumen 4, pág. 350. De esta forma, en la jurisdicción federal una solicitud de nuevo juicio fundamentada en el descubrimiento de nueva prueba puede ser presentada inicialmente ante el tribunal sentenciador, aun cuando la sentencia condenatoria esté bajo la consideración de un foro apelativo. Al respecto, el primer apartado del inciso b de la regla 33 de las Reglas Federales de Procedimiento Criminal dispone:

> Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

De esta forma, en dicha jurisdicción no es necesario solicitar autorización al tribunal apelativo para presentar una moción de nuevo juicio ante el foro de instancia. Si bien el tribunal de instancia puede adjudicar si procede la moción en sus méritos, si decide conceder el nuevo juicio tiene antes que solicitarle al tribunal apelativo que le devuelva el caso a su jurisdicción antes de iniciar cualquier procedimiento ulterior. Charles A. Wright, Nancy J. King & Susan R. Klein, Federal Practice and Procedure: Criminal 3d, 3ra ed.,Minnesota, Ed. West Publishing Co., 2004, Volumen 3, sec. 557, pág. 568. Véase, en general, United States v. Cronic, 466 U.S. 648, 667 esc. 42 (1984); United States v. Graciani, 61 F.3d 70, 77-79 (1er Cir. 1995); Zamloch v. United States, 187 F.2d 854 (9no Cir. 1951).

III

En su escrito en cumplimiento de orden el Procurador General nos presenta un planteamiento de umbral que amerita consideración, en cuanto aduce que la moción de nuevo juicio del peticionario fue presentada a destiempo. El Procurador razona que a partir de Pueblo v. Marcano Parrilla I, supra, es condición para la consideración de una moción de nuevo juicio el que la sentencia impugnada sea final y firme antes de presentarse la moción. Entiende el Procurador que como la sentencia criminal dictada en contra del peticionario no ha advenido final y firme por no haber concluido aún los procesos en la etapa apelativa, su solicitud es prematura e improcedente. De esa forma, según el Procurador, el peticionario se encuentra en una especie de "limbo jurídico", pues la Regla 189 de Procedimiento Criminal, requiere que la moción de nuevo juicio se presente dentro del término de treinta (30) días desde que se tiene conocimiento de los nuevos elementos de prueba, pero la jurisprudencia obliga a esperar a la conclusión de todo el proceso apelativo para poder presentar su moción. Consiguientemente, la petición de nuevo juicio en este caso, según el Procurador, es prematura y la que se pudiera presentar al concluir el proceso apelativo sería irremediablemente tardía. No obstante, el Procurador nos impele a que declaremos prematura la solicitud del peticionario; aduce que una vez concluido el procedimiento apelativo, si el peticionario aún no está satisfecho, puede entonces

presentar su moción al amparo, no de la regla 192, sino de la regla 192.1 de Procedimiento Criminal.

En Pueblo v. Marcano Parrilla, supra, explicamos el origen del lenguaje utilizado en nuestra regla 192, y razonamos que procediendo la misma del artículo 954(4) de la Ley española de Enjuiciamiento Criminal requería un análisis de la doctrina civilista del recurso de revisión y nuevo juicio. Citando cierta jurisprudencia española, señalamos que uno de los requisitos del recurso de revisión del artículo 954(4) es que la sentencia criminal impugnada sea final y firme. Id. pág. 567. De esta forma, determinamos que la moción al amparo de nuestra regla 192 de Procedimiento Criminal "sólo puede invocarse después de dictada sentencia y de ésta haber advenido final y firme…". Id. pág. 570.

No obstante, en Pueblo v. Marcano Parrilla II, supra, al reconsiderar la norma sobre cuándo procede una moción al amparo de la regla 192, y reiterando el propósito dispositivo de liberalizar el derecho a nuevo juicio, resolvimos que dicha moción "procederá en cualquier momento posterior a la fecha en que fue dictada la sentencia". Pueblo v. Marcano Parrilla II, supra, pág. 13 (en reconsideración) (énfasis suplido). Y es que no puede ser de otro modo. Las Reglas de Procedimiento Criminal no prescriben de forma precisa la etapa procesal, después de dictada la sentencia condenatoria, en la cual se puede presentar una moción de nuevo juicio al amparo de la regla 192. Según señalé anteriormente,

la única limitación temporal a esta moción es que se presente dentro de los treinta (30) días siguientes al descubrimiento de los nuevos elementos de prueba que la fundamentan. Requerir que la sentencia sea final y firme permitiría, como en el caso de autos, que se deje en el limbo el derecho de un acusado a solicitar un nuevo juicio cuando su causa está ante la consideración de un foro apelativo.[43] Esta situación tornaría en tardía su solicitud, por lo que sólo le restaría invocar la regla 192.1 de Procedimiento Criminal, que de por sí requiere la concurrencia de otras tantas condiciones.

Por último, no encuentro razón jurídica relevante que lleve a este Tribunal a restringir el momento en el cual se puede presentar esta moción después de dictada una sentencia criminal. En ausencia de una expresión legislativa al respecto, no debemos imponer trabas innecesarias al uso de aquellos mecanismos estatutarios que pueden servir para descubrir la verdad y lograr la más certera justicia. Indudablemente ello atentaría

---

[43] Debemos recordar que en la etapa apelativa no se puede considerar prueba que no fue presentada en el juicio original, aun cuando ésta fuese descubierta después de dictada la sentencia por el tribunal de instancia. Pueblo v. Morales Suárez, 117 D.P.R. 497, 502 (1986). Por tanto, prohibir la presentación de una moción de nuevo juicio cuando el acusado fue diligente en presentar su recurso apelativo lo penalizaría ya que tornaríamos en tardía su moción al amparo de la regla 192 y la nueva prueba se perdería pues no podría ser evaluada al revisarse la sentencia que lo condenó.

contra el propósito liberalizador que impulsó la adopción de la regla 192 en 1963.[44]

En el caso de autos, el peticionario presentó su moción de nuevo juicio mientras estaba ante la consideración del Tribunal de Apelaciones un recurso solicitando la revocación de la sentencia de instancia. Conforme a la discusión anterior, el que el peticionario presentara su moción después de dictada la sentencia criminal pero antes de que el proceso apelativo hubiese concluido, no convierte en prematura su solicitud. Igualmente, habiendo reconocido el propio Procurador que dicha moción se presentó dentro del término de treinta (30) días desde que fue descubierta la nueva prueba, como lo ordena la regla 189 de Procedimiento Criminal, tampoco podríamos denegarla por haberse presentado tardíamente.

---

[44] Cabe mencionar que en Pueblo v. Chévere Heredia, 139 D.P.R. 1 (1995), mientras estaba ante la consideración de este Tribunal un recurso de *certiorari* para que revisáramos una sentencia criminal, el acusado presentó una moción de nuevo juicio al amparo de la regla 192 ante el tribunal de instancia que lo condenó. Posteriormente nos informó de la presentación de dicha moción y solicitó que devolviésemos los autos originales del caso al tribunal de instancia para que resolviera la petición de nuevo juicio. En aquel momento, no tuvimos objeción a que fuera el tribunal sentenciador el que evaluara la moción de nuevo juicio del peticionario, por lo que accedimos a lo solicitado. No obstante, ordenamos al peticionario que mantuviera informado a este Tribunal sobre cualquier acción que tomase el foro de instancia. No consta en el expediente de este caso (CR-1993-66) que el Procurador General objetara a que se permitiera la presentación de una moción de nuevo juicio antes de que la sentencia fuera final y firme y estando aún vigente el proceso apelativo.

IV

Indica el peticionario que presentó una moción solicitando autorización para presentar una solicitud de nuevo juicio debido a que la jurisdicción sobre el caso la tenía el Tribunal de Apelaciones. Alega que su solicitud cumplía *prima facie* con los requisitos básicos de la regla 192, por lo que el foro apelativo debió haber concedido la autorización solicitada. Arguye que en esta etapa la función del Tribunal de Apelaciones se limita meramente a determinar si existen fundamentos suficientes para ceder su jurisdicción al Tribunal de Primera Instancia para que sea éste el que determine si procede celebrar un nuevo juicio. Por esta razón, solicita que revoquemos al Tribunal de Apelaciones, paralicemos el trámite apelativo y le permitamos presentar su moción ante el tribunal de instancia.

A esto, se opone el Procurador General, argumentando que la solicitud de nuevo juicio no cumple con lo requerido por las Reglas de Procedimiento Criminal y la jurisprudencia. Entiende, en primer lugar, que la evidencia que presenta el peticionario es acumulativa y no "nueva" ya que la existencia de más de un Quenepo se trajo a la atención del tribunal durante el juicio y se incluyó en la teoría del caso de la defensa. También razona el Procurador que la nueva evidencia no prueba claramente la inocencia del acusado y sólo tiene como objetivo generar confusión en cuanto a la identidad del "Quenepo" que participó en los hechos criminales.

Concluye, por consiguiente, que la evidencia que fundamenta la moción del peticionario ya fue escuchada, aquilatada y descartada por el juzgador de los hechos. Por último, el Procurador arguye que el recurso de autos es tan sólo un intento del peticionario por lograr un segundo proceso apelativo que propone los mismos argumentos que su apelación ante el Tribunal de Apelaciones.

El Tribunal de Apelaciones, como hemos visto, denegó la moción del peticionario expresando solamente que éste no lo puso en condiciones de evaluar la razonabilidad de su solicitud en dicha etapa apelativa. No consideró el foro apelativo intermedio que correspondía al tribunal sentenciador pasar juicio sobre los méritos de la moción de nuevo juicio y la nueva prueba presentada.

Una moción de nuevo juicio al amparo de la regla 192 requiere que los tribunales evaluemos los nuevos elementos de prueba en conjunto a la que fue presentada durante el juicio original para determinar si se debe conceder lo solicitado. Se debe determinar, entre otras, si la nueva prueba no es meramente acumulativa y si la nueva evidencia, junto a la que fue presentada en el juicio original, pudiera haber suscitado en el ánimo del juzgador una duda razonable en cuanto a la culpabilidad del peticionario. El tribunal sentenciador es el que tiene conocimiento de primera mano del juicio original, el que escuchó a los testigos y pudo examinar su conducta en la silla testifical. La más eficaz administración

judicial nos requiere permitir que el tribunal sentenciador ejerza su discreción hasta el máximo posible al considerar una moción de esta naturaleza antes de involucrar a los foros apelativos. De esta forma, después de una detenida reflexión sobre los nuevos elementos de prueba, el tribunal que dictó la sentencia puede corregir cualquier determinación de hecho que entienda mal formulada o no sostenida por la evidencia presentada. Se aprovecha de esa forma la familiaridad que tiene el juzgador original con el caso y aseguramos que los méritos de la moción sean examinados de la forma más prudente y justa.

Por lo antes dicho, coincido con la sentencia dictada en el día de hoy que resuelve que el Tribunal de Apelaciones no debió denegar la moción del peticionario en sus méritos. No siendo improcedente de su faz la solicitud presentada, debió permitir el foro apelativo que el peticionario presentara su moción de nuevo juicio ante el tribunal sentenciador. No le correspondía al Tribunal de Apelaciones determinar en esta etapa si los fundamentos aducidos en la moción eran suficientes para la concesión de un nuevo juicio.

El Procurador señala que la prueba ofrecida por el peticionario en su moción no es "nueva" en el sentido de que no trae argumentos no presentados originalmente en el juicio. Ello no es suficiente para que pueda descartarse de plano a nivel apelativo. La novedad de la solicitud del peticionario consiste en traer prueba directa en

cuanto a la identidad del segundo "Quenepo" y su posible conexión con los eventos criminales acaecidos en el caso de autos. Cabe destacar a este punto que el Procurador General no ha controvertido la alegación del peticionario de que el Sr. Javier Francisco Sánchez González, alegadamente conocido como Quenepo, no estuvo disponible durante el juicio. Tampoco el Tribunal Apelativo se expresó al respecto. Por tanto, para propósitos de la resolución del caso de autos debemos dar por cierta esta alegación; claro está, al momento de evaluar en sus méritos la moción de nuevo juicio, el Tribunal de Primera Instancia podrá pasar revista sobre esta alegación. Lo aconsejable era, pues, que el foro apelativo remitiera la moción de nuevo juicio al Tribunal de Primera Instancia, antes de decidir sobre los méritos de la sentencia criminal ya recaída que estaba ante su consideración.

De igual forma, estoy de acuerdo con la sentencia de este Tribunal en cuanto resuelve que no procede revisar la determinación del foro apelativo, según se solicita en el otro recurso presentado ante este Tribunal (CC-2006-532), sin contar con la apreciación que pueda hacer el foro de instancia sobre la nueva prueba. Habiendo encomendado al foro sentenciador la consideración de la moción de nuevo juicio presentada en la etapa apelativa, lo más apropiado es que nos abstengamos de considerar el recurso del peticionario que solicita la revocación de la

sentencia que lo condenó hasta tanto dicho foro resuelva la petición de nuevo juicio objeto del recurso de autos.


                        Liana Fiol Matta
                        Jueza Asociada